UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X

KOREY WATSON,

                                  Plaintiff,

        -against-

THE CITY OF NEW YORK, FJC SECURITY SERVICES, INC., SABRINA DUNCAN, ASHLEY JOHNSON, KERN PROBHERBS, NATASIA LYLES, TAMIKA JENKINS, PATRICIA ROBINSON, and SEAN WILLIAMS,

                                  Defendants.

-----------------------------------------------------------------------------X

**FIRST AMENDED COMPLAINT**

**23-cv-8975 (LDH)(TAM)**

      Plaintiff KOREY WATSON, by his attorneys, Gideon Orion Oliver and Cohen&Green PLLC, hereby complains of the Defendants as follows:

## JURISDICTION

      1.      Plaintiff brings this action pursuant to 42 USC §§ 1983 and 1988, the Fifth and Fourteenth Amendments to the United States Constitution, and New York law.

      2.      This Court has jurisdiction over those claims pursuant to 28 USC §§ 1331, 1343 and 1367.

## VENUE

      3.      Venue is proper pursuant to 28 USC § 1391, *et seq.,* in the Eastern District of New York, where Defendant City of New York ("City") resides and where the majority of the actions complained of herein occurred.

## PARTIES

      4.      At all relevant times mentioned herein, Plaintiff KOREY WATSON (Mr.; he/him) has been a resident of New York County in the City and State of New York.

5. At all relevant times mentioned herein, Defendant CITY OF NEW YORK (the "City") was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Department of Social Services ("DSS"), which is comprised of the administrative units of the New York City Human Resources Administration ("HRA") and the New York City Department of Homeless Services ("DHS"), and their employees, agents, and/or contractors.

6. At all relevant times hereinafter mentioned, Defendant FJC SECURITY SERVICES, INC. ("FJC") was and is a corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its employees and agents.

7. At all times relevant herein, Defendant City contracted with Defendant FJC to provide, and Defendant FJC provided, security guard services at City HRA offices, including the HRA office located on the 1st floor of 275 Bergen Street in Brooklyn, New York ("275 Bergen").

8. Such HRA sites, including the HRA office located on the 1st floor of 275 Bergen Street in Brooklyn, New York, are administrative offices and centers where HRA administers public assistance, food stamps, Medicaid, and other entitlement programs.

9. At all relevant times hereinafter mentioned, upon information and belief, Defendants Sabrina Duncan, Ashley Johnson, Kern Probherbs, Natasia Lyles, Tamika Jenkins, Patricia Robinson, and Sean Williams (the "Individual Defendants") were employed by either Defendant FJC or Defendant City to perform duties that included providing security services.

10. The Individual Defendants were assigned to the HRA office located on the 1st floor of 275 Bergen Street in Brooklyn, NY on September 7, 2022.

11. At all times hereinafter mentioned, the Individual Defendants, either personally or through their employees or subordinates, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, policies, and/or practices of the City of New York.

12. At all relevant times, the Individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City and/or Defendant FJC who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties for Defendant City.

13. Each and all of the acts and omissions of the Individual Defendants alleged herein occurred while they were acting within the scope of their employment by Defendant City and/or Defendant FJC.

14. At all times relevant herein, as set forth more fully below, the Individual Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or undertaken with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

15. Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Individual Defendants, or any other employee present, take any steps to intervene in, prevent, or otherwise limit the unconstitutional conduct engaged in by their fellows.

## **GENERAL MUNICIPAL LAW COMPLIANCE**

16. Plaintiff timely served a Notice of Claim on the Office of the Comptroller of the City of New York related to the September 7, 2022 incident described below on December 6, 2022.

17. Plaintiff provided testimony about the incident at a hearing pursuant to New York General Municipal Law Section 50-h on February 2, 2023.

18. At least thirty days have elapsed since February 2, 2023 and the City has either neglected or refused adjustment thereof.

19. This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York law.

## STATEMENT OF FACTS

### Background

20. In August and September of 2022, Mr. Watson was receiving cash assistance and food stamp benefits administered by the City's HRA.

21. In late August or early September, Mr. Watson had visited the HRA office located on the 1st floor of 275 Bergen Street to address a lapse in his benefits. At that time, a female HRA supervisor told him that his benefits should be reactivated promptly and directed him to come back to the office in person a week later if any problems persisted.

22. When Mr. Watson's benefits had not been reactivated around a week later, on September 7, 2022, Plaintiff returned to the HRA office as instructed by the HRA supervisor in order to renew his cash assistance and food stamp benefits.

23. At all times relevant herein, the public areas within the 1st floor of 275 Bergen Street were controlled and operated by agents and/or employees of Defendants City and/or FJC.

24. Although the City requires hundreds of people to use the 1st floor of 275 Bergen Street every day in order to access and address issues with their benefits, at all times relevant herein, Defendants City and FJC failed to provide meaningful security measures to prevent people from bringing dangerous weapons into the building and/or from attacking and injuring other HRA users.

25. For example, Defendants City and FJC did not utilize magnetometers or hand-held metal detector wands to screen people or their bags or personal items when they entered the building and/or the 1st floor.

26. In fact, Defendants City and FJC failed to search people or their bags or personal items at all when they entered the building and/or the 1st floor.

27. As Mr. Watson waited in line to access HRA services on the 1st floor of 275 Bergen the afternoon of September 7, 2022, another person who was also waiting in the same line began to yell at him loudly.

28. Mr. Watson did not and does not know that person.

29. The Individual Defendants, who were in uniform and on duty at the time, were within a few feet of Mr. Watson and the unidentified person when he started yelling at Mr. Watson.

30. As the unknown person yelled at Mr. Watson, he pulled out a box cutter and tried to cut Mr. Watson in the face.

31. Mr. Watson backed away and dodged this first attack, but the man kept coming at him, swinging his knife over and over.

32. A number of the Individual Defendants stood ten to fifteen feet away, with a clear view of the man attacking Mr. Watson.

33. The Individual Defendants knew or should have known that Mr. Watson was in imminent danger as soon as his assailant pulled a box cutter out of his pocket.

34. The Individual Defendants were close enough to intervene and to prevent what happened next.

35. As the Individual Defendants looked on and did nothing, the attacker plunged the box-cutter into Mr. Watson's chest just above his right collarbone and tore a six-inch gash down the right side of his chest.

36. Only after Mr. Watson began bleeding profusely from the large wound did the Individual Defendants react.

37. One or more of the Individual Defendants then briefly grabbed the attacker, *but then let him go*, allowing him to escape.

38. After between 5 and 10 minutes, emergency medical responders arrived at the scene, provided emergency care to Mr. Watson, and transported him to the hospital.

39. There, Mr. Watson received emergency treatment from the Level 1 Trauma Team, who were concerned that the stabbing may have punctured Mr. Watson's lung.

40. All told, it took 17 stitches in multiple layers to close up the gaping wound in Mr. Watson's chest.

41. To this day, Mr. Watson has a large, six-inch scar, and suffers from pain, reduced strength and range of motion, difficulty performing basic tasks, and other physical and emotional harms as a result of the injuries he sustained on September 7, 2022.

**FIRST CLAIM FOR RELIEF**

**For Negligence Under New York Common Law Against All Defendants**

42. Plaintiff incorporates by reference the allegations set forth in all preceding and

following paragraphs as if fully set forth herein.

43. Defendants owed Mr. Watson a duty of care in connection with the operation of the HRA office on the 1st Floor at 275 Bergen Street.

44. Defendants' breaches of that duty directly and proximately caused Plaintiff to sustain physical and emotional injury, pain and suffering, and other injuries.

45. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff physical and emotional injury, and/or otherwise damaged and injured Plaintiff.

46. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

**Due Process Against Defendant City and the Individual Defendants**
*Pursuant to 42 U.S.C. § 1983 for the Individual Defendants' Violations of Plaintiff's Rights Protected Under the Fifth and Fourteenth Amendments to the United States Constitution*

47. Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

48. Defendant City and the Individual Defendants assumed, through their promises or actions, an affirmative duty to ensure the safety of Plaintiff and others who must visit its HRA facilities in person related to their benefits by providing adequate security, screening, and police services, as well as by ensuring that its agents and employees, including its security contractors, are adequately trained, supervised, and disciplined.

49. Defendant City and the Individual Defendants knew that their failures to provide such screening, security, and police services could – and would – lead to harm, including physical injuries such as the one Mr. Watson suffered.

7

50. Mr. Watson expected, and relied on, Defendant City and the Individual Defendants to provide minimal screening, security, and police services at the HRA office on the 1st floor at 275 Bergen Street on September 7, 2022.

51. As described above, the Individual Defendants had direct contact with Mr. Watson and his assailant, and not only failed to intervene when Mr. Watson was attacked, but also belatedly detained the attacker, then let him escape.

52. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's legal rights, caused Plaintiff physical and emotional injury, and/or otherwise damaged and injured Plaintiff.

53. Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### THIRD CLAIM FOR RELIEF

**Municipal Liability Against Defendant City of New York**
*Pursuant to 42 U.S.C. 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978) for Defendants' Violations of Plaintiff's Rights Under the Fifth and Fourteenth Amendments to the United States Constitution*

54. Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

55. At all times relevant to Plaintiff's claims herein, Defendant City was and is responsible for ensuring the provision of adequate security, screening, and police services at HRA offices.

56. Additionally, at all times relevant to Plaintiff's claims herein, Defendant City was and is responsible for ensuring that the City reasonable and appropriate training, supervision,

8

investigations, and discipline were in place with respect to DHS peace officers as well as FJC security guards.

57. The wrongful acts or omissions complained of herein were carried out by the Individual Defendants pursuant to customs, practices, and usages of the City that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City.

58. For example, at all times relevant to Plaintiff's claims herein, Defendant City had, and has, *de facto* policies, practices, and customs of failing to provide adequate security, screening, and police services at HRA offices, of failing to investigate, supervise, and discipline DHS and/or contracted FJC employees adequately when they are witnesses to and/or involved in incidents of conflict or violence with members of the public.

59. Beyond that, Defendant City has also failed to ensure that DHS and/or contracted FJC employees who are stationed in HRA offices and shelters are adequately trained with respect to providing security, screening, and police services.

60. The acts and omissions and injuries complained of herein are a direct and proximate result of those *de facto* policies, practices, and customs, and of those failures to train.

61. Defendant City knew or should have known about years of persistent problems relating to violence plaguing HRA offices and shelters, and that the mere presence of FJC security guards and/or DHS peace officers such as the Individual Defendants in HRA spaces was not adequate to address that violence.

62. Defendant City knew or should have known that the security, screening, and police policies, procedures, and protocols in place at City-run HRA offices and shelters across the five boroughs, including the HRA office where Plaintiff was attacked, and the training

9

available to DHS peace officers and/or contracted FJC employees, was inadequate to ensure the safety of people, like Mr. Watson, who were required to visit HRA offices to access and deal with their public benefits and entitlements .

63. Nevertheless, Defendant City failed to take steps to change the inadequate security, screening, and police in such City-run HRA spaces.

64. Multiple news articles have been published which detail the prevalent violence in HRA offices and shelters city-wide, and related litigation.

65. For example, on May 29, 2018, the *New York Daily News* published, "Private Security Firms at Homeless Shelters facing 21 Lawsuits Over Alleged Violence" by Greg B. Smith, available online at https://www.nydailynews.com/2018/05/29/private-security-firms-at-homeless-shelters-facing-21-lawsuits-over-alleged-violence/ (last accessed December 3, 2023), which described multiple incidents of violence either perpetrated by or witnessed and allowed to continue by FJC security personnel at City homeless shelters.

66. Additionally, on January 4, 2019, *City & State New York* published "Controversial Security Firm Receives $284 Million in Contract Renewal from NYC," by Zach Williams, available online at https://www.cityandstateny.com/policy/2019/01/controversial-security-firm-receives-284-million-contract-renewal-from-nyc/177811/ (last accessed December 3, 2023), reporting that FJC had been "the subject of numerous lawsuits in recent years, including its reported involvement in the tumultuous arrest of 23-year-old Jazmine Headley, a Brooklyn woman who was thrown to the floor and had her 1-year-old son ripped from her hands by police following an incident in early December at a Human Resources Administration office." This article further states that FJC had then "been accused of providing substandard security services that allowed attacks to happen inside shelters."

67. In addition, numerous lawsuits have been filed against Defendant City and/or Defendant FJC in situations, similar to those here, involving their failures to prevent, intervene in, or address violence in DHS offices and sheltered.

68. For example, in *Credle v. City of New York, et al.*, Defendants City and FJC were sued on negligence and municipal liability claims when the plaintiff, who lived in a City-run shelter with security provided by FJC, was assaulted and injured by his roommate, where Defendants City and FJC failed to ensure that security guards were available to respond. *See Credle v. City of New York*, 65 Misc. 3d 1215 (N.Y. Sup. Ct. 2019).

69. In *Lugo v. FJC Security Services Inc., et al.*, New York County Supreme Court Index No. 154302/2015, Defendant FJC was sued on negligence grounds when the plaintiff was attacked by another resident at a City shelter. This shelter had a history of prior stabbings perpetrated by residents who were able to bring weapons inside.

70. The plaintiff *in Stora v. City of New York, et al.*, sued Defendants City and FJC, among others, for FJC employees' role in allowing a serious physical attack to occur after theplaintiff engaged in a verbal altercation with another member of the public at a City-run shelter. *See Stora v. City of New York, et al,* 2013 N.Y. Slip Op. 33123 (N.Y. Sup. Ct. 2013).

71. In *Gooding v. Corp. Headquar FJC Services*, Defendant FJC was sued on assault and battery claims as well as for civil rights violations when FJC employees beat, cuffed, and arrested a City shelter resident. *See Gooding v. Corp. Headquar FJC Services*, 2009 N.Y. Slip Op. 31609 (N.Y. Sup. Ct. 2009).

72. In *Preston v. City of New York, et al.*, Defendants City and FJC, among others, were sued for negligence when a number of security officers threw the plaintiff, a City shelter resident, on the ground, injuring him, while other security officers stood by and watched without

11

intervening. *See Preston v. City of New York, et al.*, 21-cv-533 (S.D.N.Y.).

73. In *Rivera v. City of New York, et al.*, Defendant City was sued for failure to train and supervise in addition to failure to intervene when an FJC employee used inappropriate language when addressing the plaintiff's request for assistance, causing the plaintiff to be arrested and brutally beaten by an HRA peace officer. *See Rivera v. City of New York, et al.,* 18-cv-9517 (S.D.N.Y.).

74. As seen above, Defendant City has exhibited deliberate indifference to the realities that its policies, practices, and customs, and inadequate training, supervision, investigation, and discipline, would lead to the violation of individuals' constitutional rights in general, and caused the violations of Plaintiff's rights in particular.

75. As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff physical and emotional injury, and/or otherwise damaged and injured Plaintiff.

## FOURTH CLAIM FOR RELIEF

**Violations of New York State Law
Against Defendant City of New York and the Individual Defendants**
*Pursuant to New York State Common Law and the New York State Constitution*

76. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

### a. *Respondeat Superior* Liability

77. The conduct of the Individual Defendants alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power

12

and/or authority, and, as a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

### a. Violations of New York State Constitution

78.  Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I, § 6 of the New York State Constitution.

79.  A damages remedy here is necessary to effectuate the purposes of Article I, § 6 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

80.  As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of Plaintiff's federal, state, and/or other legal rights, caused Plaintiff physical and emotional injury, and/or otherwise damaged and injured Plaintiff.

81.  The Individual Defendants' unlawful conduct was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1.  Actual and punitive damages against the Individual Defendants and Defendant FJC in amounts to be determined at trial;

2.  Actual damages in an amount to be determined at trial against the City of New York;

3.  Statutory attorney's fees, disbursements, and costs of the action pursuant to, *inter*

       *alia,* 42 U.S.C. § 1988; and

4.    Such other relief as the Court deems just and proper.

Dated: Brooklyn, New York
       May 29, 2024

                                       **GIDEON ORION OLIVER**

                                       */s/ Gideon Orion Oliver*
                                       277 Broadway, Suite 1501
                                       New York, NY  10007
                                       t: 718-783-3682
                                       f: 646-349-2914
                                       Gideon@GideonLaw.com


                                       J. Remy Green
                                       Elena L. Cohen
                                       Jessica Massimi
                                       **COHEN&GREEN P.L.L.C.**
                                       1639 Centre Street, Suite 216
                                       Ridgewood, New York 11385
                                       (929) 888.9480 (telephone)
                                       (929) 888.9457 (facsimile)
                                       remy@femmelaw.com