UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KOREY WATSON,

                   *Plaintiff*,

        -against-

THE CITY OF NEW YORK, FJC SECURITY
SERVICES, SABRINA DUNCAN, ASHLEY
JOHNSON, KERN PROBHERBS, NATASIA LYLES,
TAMIKA JENKINS, PATRICIA ROBINSON, AND
SEAN WILLIAMS,

                 *Defendants*.
------------------------------------------------------------------------X

Oral Argument Requested

Case No. 23-cv-8975 (LDH) (CHK)

---

**PLAINTIFF'S AMENDED MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE
PLEADINGS PURSUANT TO FED R. CIV. P. 12 (C)**

---

GIDEON ORION OLIVER
277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
Gideon@GideonLaw.com

Regina Yu*
COHEN&GREEN P.L.L.C.
1639 Centre Street, Suite 216
Ridgewood, New York 11385
t: (929) 888.9480
regina@femmelaw.com
*admission pending

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ 3

PRELIMINARY STATEMENT ................................................................................................... 6

STATEMENT OF FACTS ........................................................................................................... 7

   A.   The Slashing at the HRA Office ..................................................................................... 7

   B.   The Unrelated 2024 Comptroller Settlement and "General Release" ............................. 9

STANDARD OF REVIEW ........................................................................................................ 10

ARGUMENT ............................................................................................................................. 12

   I.     The Court Should Deny the City Defendants' Motion Because They Failed to Raise An Affirmative Defense Related to the Release. ...................................................................... 12

   II.    The Court Should Deny the City Defendants' Rule 12(c) Motion Because it Relies on Matters Outside the Pleadings. ....................................................................................... 13

   III.   The Court Should Decline to Convert The City Defendants' Motion to a Summary Summary Judgment Motion Pursuant to Fed. R. Civ. P. 12(d), or, Alternatively, Allow for Limited Discovery. ........................................................................................................... 14

   IV.   The Release Should Not Bar Mr. Watson's Claims Here Because Mr. Watson Did Not Fairly and Knowingly Waive His Rights to Pursue his Claims in This Lawsuit. ..................... 15

      a.   If the Court gets to the merits of the City Defendants' application, the proper inquiry is whether the release was knowing and voluntary. .............................................. 15

      b.   Plaintiff Did Not Knowingly and Voluntarily Waive His Claims in This Incident..........
............................................................................................................................ 22

CONCLUSION.......................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actrade Fin. Techs., Ltd.*,
424 B.R. 59 (Bankr. S.D.N.Y. 2009) ........................................................................18

*Bormann v. AT & T Communications, Inc.*,
875 F.2d 399 (2nd Cir. 1989), *cert. denied*, 493 U.S. 924 (1989) ....................................21, 22

*Branum v. Clark*,
927 F.2d 698 (2d Cir. 1991) ........................................................................12

*Cahill v. Regan*,
5 N.Y.2d 292 (1959) ........................................................................17

*Campos v. Aegis Realty Mgmt. Corp.*,
2020 US Dist LEXIS 14138 (SDNY 2020) ........................................................19, 20, 23

*Caraballo v. City of New York*,
2025 U.S. App. LEXIS 12041 (2d Cir. 2025) ................................................................16, 23

*Chris Terry v. City of New York, et al.*,
EDNY Docket Number 23-CV-5955 (NRM)(JRC) ........................................................21, 23

*Dahkeem Miller, et al. v. City of New York, et al.*,
SDNY Docket Number 21-cv-02616 (PKC)(JW) ........................................................20, 23

*Dury v. Dunadee*,
52 A.D.2d 206 (4th Dep't 1976) ........................................................................17, 18

*Felder v. Casey*,
487 U.S. 131 (1988) ........................................................................22

*Gardstein v. Kemp & Beatley, Inc.*,
No. 82 CIV. 0781 (MEL), 1987 WL 7378 (S.D.N.Y. Feb. 20, 1987) ....................................18

*Green v. Lake Placid 1980 Olympic Games, Inc.*,
147 A.D.2d 860 (App. Div. 3d. 1989) ........................................................................19

*Huang v. Llerena-Salazar*,
222 A.D.3d 1033 (2d Dep't 2023) ........................................................................19

*Irish Lesbian & Gay Org. v. Giuliani*,
143 F.3d 638 (2d Cir. 1998) ........................................................................12

*Johnson v. Lebanese Am. Univ.*,
  84 A.D.3d 427 (1st Dep't 2011) ...........................................................................19

*Juster Assocs. v. City of Rutland*,
  901 F.2d 266 (2d Cir. 1990)................................................................................12

*Kristoferson v. Otis Spunkmeyer, Inc.*,
  965 F. Supp. 545 (S.D.N.Y. 1997).......................................................................22

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)..........................................................................14, 15

*Laniok v. Advisory Comm. Of Brainerd Mfg. Co. Pension Plan*,
  935 F.2d 1360 (2nd Cir. 1991)............................................................................22

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*,
  354 F. Supp. 2d 293 (S.D.N.Y. 2004)..................................................................18

*Mangini v. McClurg*,
  24 N.Y.2d 556 (1969) ..........................................................................................17

*Mazzurco v. PII Sam, LLC*,
  153 A.D.3d 1341 (2d Dep't 2017) .......................................................................18

*McCann v. Coughlin*,
  698 F.2d 112 (2nd Cir. 1983)..............................................................................23

*Monahan v. NYC Department of Correction*,
  214 F.3d 275 (2nd Cir. 2000)..............................................................................13

*Monell v. Dep't of Soc Servs.*,
  *436 U.S. 658 (1978)* ...........................................................................................10

*Okoro v. Marriott Int'l, Inc.*,
  No. 07 Civ. 165, 2007 WL 980429 (SDNY Apr. 3, 2007).....................................22

*Paulino v. Braun*,
  170 A.D.3d 506 (1st Dep't 2019) ........................................................................19

*Peralta v. City of New York*,
  2022 U.S. Dist. LEXIS 229972 (SDNY 2002).......................................................18

*Pucilowski v. Spotify USA, Inc.*,
  No. 21 Civ. 1653, 2022 WL 836797 (SDNY Mar. 21, 2022), *aff'd,* 2022 WL
  16842926 (2nd Cir. Nov. 10, 2022).....................................................................22

*Richards v. Select Ins. Co.*,
  40 F. Supp. 2d 163 (S.D.N.Y. 1999).....................................................................11

*Saks v. Franklin Covey Co.*,
   316 F.3d 337 (2d Cir. 2003)....................................................................13

*In re Schaefer*,
   18 NY2d 314 (1966)............................................................................18

*Smith v. City of New York*,
   236 A.D.3d 414 (1st Dep't 2025) ......................................16, 17, 20, 23

*Vornado Realty Tr. v. Castleton Env't. Contractors*,
   LLC, No. 08 Civ. 4823 (DLI), 2011 WL 4592800 (E.D.N.Y. Sept. 30, 2011).....................19

*Wells v. Shearson Lehman/American Express*,
   72 N.Y.2d 11 (1988)...........................................................................24

**Statutes**

42 U.S.C. 1983.........................................................................................9

42 USC 1988...........................................................................................23

42 USC § 1983....................................................................................7, 22

**Other Authorities**

Fed. R. Civ. P. 8(c) ..............................................................................13

Fed. R. Civ. P. 12(c) ...............................................................6, 11, 12, 14

Fed. R. Civ. P. 12(d) ............................................................................15

Fed. R. Civ. P. 12(b)(6).........................................................................15

Fed. R. Civ. P. 56 .................................................................................15

## PRELIMINARY STATEMENT

On December 6, 2023, Plaintiff Korey Watson brought this action under 42 USC § 1983 and New York law against the City of New York, FJC Security Services Inc. ("FJC"), and Sabrina Duncan, Ashley Johnson, Kern Probherbs, Natasia Lyles, Tamika Jenkins, Patricia Robinson, and Sean Williams (the "Individual Defendants"), all of whom were employed by either the City or FJC at all relevant times.

As pleaded in the May 29, 2024 First Amended Complaint (the "FAC," ECF 18), on September 7, 2022, while at a City of New York Human Resources Administration ("HRA") office, Mr. Watson was assaulted by an unknown individual while waiting in a line into which, and as several of the Individual Defendants looked on, failed to provide meaningful security measures to protect him from being assaulted by an unknown assailant, failed to intervene when the Mr. Watson was violently attacked, and subsequently allowed the assailant to escape.

The City Defendants argue that this entire civil rights action – arising from a brutal stabbing inside a City-run facility – should be dismissed based on a boilerplate release Mr. Watson signed nearly two years later in connection with a completely unrelated $3,000 pre-litigation settlement with the Comptroller's Office. The City Defendants' position — that the Court must enforce the release without examining the surrounding facts — treats this as a matter of commercial contract law. However, as argued below, where a boilerplate release purports to waive significant rights, including civil rights claims such as those in play here (among others), the Court should apply a more searching standard to determine whether the waiver was knowing and voluntary. Viewed through that lens, the real issue here is not what the release literally says in small print, but rather whether Mr. Watson, a layperson with limited education and no legal sophistication, knew that signing a form to resolve a completely separate claim arising from a

completely separate incident would forever waive his rights to pursue his significant claims in this lawsuit, arising from a completely separate set of facts.

Applying both New York law, as well as the Second Circuit's multi-factor test used in federal employment discrimination cases to discern whether a plaintiff intended to waive certain rights by executing a release, the City Defendants' motion for judgment on the pleadings fails as a matter of law as well as considering equity and fairness principles. The Court should therefore deny the City Defendants' motion.

## STATEMENT OF FACTS

### A. The Slashing at the HRA Office

As set forth in the FAC, in September of 2022, Mr. Watson received cash assistance and food stamp benefits administered by the City's HRA. FAC" ¶ 20. In late August or early September 2022, Mr. Watson visited the HRA office on the 1st floor of 275 Bergen Street to address a lapse in his benefits. FAC ¶ 21. A HRA supervisor told him that his benefits should be reactivated promptly and directed him to come back to the office in person a week later if any problems persisted. FAC ¶ 21. When Mr. Watson's benefits had not been reactivated around a week later, on September 7, 2022, Mr. Watson returned to the HRA office as instructed by the HRA supervisor in order to renew his cash assistance and food stamp benefits. FAC ¶ 22.

The public areas within the 1st floor of 275 Bergen Street were controlled and operated by agents and/or employees of Defendants City and/or FJC. FAC ¶ 23. As Mr. Watson waited in line to access HRA service, another person, unknown to Mr. Watson, who was also waiting in the same line, began to yell at him loudly. FAC ¶ 27. The unknown person then pulled out a box cutter and tried to cut Mr. Watson in the face. FAC ¶ 30. Mr. Watson avoided this first attack, but the man kept swinging the blade at him. FAC ¶ 31. Eventually, the attacker plunged the box-

cutter into Mr. Watson's chest just above his right collarbone and tore a six-inch gash down the right side of his chest. FAC ¶ 35.

As Mr. Watson bled profusely from the large wound, the Individual Defendants briefly grabbed the attacker, but then let him go, allowing him to escape. FAC ¶ 37. Emergency medical responders arrived at the scene soon after, provided emergency care to Mr. Watson and transported him to the hospital. FAC ¶ 38. It took 17 stitches in multiple layers to close up the gaping wound in Mr. Watson's chest. FAC ¶ 40.

The Individual Defendants, who were in uniform and on duty at the time of this incident, were present within a few feet of Plaintiff and the assailant for the duration of this encounter as it escalated but failed to intervene at all. FAC ¶¶ 29, 34. In addition, Defendants City and FJC did not utilize magnetometers or hand-held metal detector wands to screen people or their bags or personal items when they entered the building and/or the 1st floor. FAC ¶ 25. Defendants City and FJC also did not search people or their bags or personal items at all when they entered the building and/or the 1st floor. FAC ¶ 26. In all, Defendants City and FJC failed to provide even the most basic security measures to prevent people from bringing dangerous weapons into the building and/or from attacking and injuring other HRA users such as Plaintiff. FAC ¶ 24.

To this day, Plaintiff has a large, six-inch scar, and suffers from pain, reduced strength and range of motion, difficulty performing basic tasks, and other physical and emotional harms as a result of the injuries he sustained on September 7, 2022. FAC ¶ 41.

Based on the above factual allegations, Plaintiff is pursuing the following claims in this litigation: negligence under New York Common Law against all Defendants; Violations of Due Process Rights under the Fifth and Fourteenth Amendments to the United States Constitution against Defendant City and the Individual Defendants; Municipal Liability pursuant to 42 U.S.C.

1983 and *Monell v. Dep't of Soc Servs.*, *436 U.S. 658 (1978)*, against Defendant City; and Violations of New York State Law pursuant to New York State Common Law and the New York State Constitution against Defendant City and the Individual Defendants. FAC ¶¶ 42-81.

## B. The Unrelated 2024 Comptroller Settlement and "General Release"

In the fall of 2022, another attorney represented Mr. Watson concerning a different, unrelated incident from March of 2022 involving the NYPD in a shelter. Watson Declaration ("Watson Decl.") ¶¶ 1-2. That attorney filed a notice of claim (Claim No. 2022PI023821) with the NYC Comptroller on Mr. Watson's behalf. Watson Decl. ¶ 3. That claim was resolved with a pre-litigation settlement in 2024, for $3,000. Watson Decl. ¶ 4. In consummating the settlement, Mr. Watson signed a form release. *See* ECF 41-1 (the "Release"). The Release, boilerplate in nature, references only the Comptroller claim number for the unrelated incident, and does not mention the HRA incident, this lawsuit, or any of the Individual Defendants. *See* Release. Mr. Watson did not understand that this Release contained language that would impact his ability to pursue his claims in this lawsuit, let alone prevent him from pursuing his claims about the HRA slashing in this lawsuit. Watson Decl. ¶¶ 6, 15-17.

Mr. Watson's highest level of education is some college and he has no business training or experience. Watson Decl. ¶¶ # 7-8. He is unfamiliar with complicated legal writings or documents, and had never before seen a release form like the one he signed resolving his March 2022 claims. Watson Decl. ¶¶ # 11-12. He has experienced years of unstable housing, including at the time of signing this release. Watson Decl. ¶ 9. All of his employment for the past ten years has consisted of jobs where he was responsible for driving people and transporting goods from place to place. Watson Decl. ¶ 10. He did not understand that his agreement to settle the unrelated claim could impact his claims in this lawsuit. Watson Decl. ¶¶ 15-17. He would have

never accepted $3,000 to settle both his claims in Claim No. 2022PI023821 and his claims in this lawsuit, especially considering the severity and long-lasting impact of his injuries from the brutal slashing in the HRA office. Watson Decl. ¶¶ 18-19.

Notably, the City Defendants disclosed the Release about ten months after Mr. Watson had signed it and about nine months after the City Defendants filed an Amended Answer on September 9, 2024. ECF 28. Through that point, Mr. Watson had been an active participant in his lawsuit and was thoroughly engaged in the discovery process. His clear and persistent commitment to moving this lawsuit forward at the time he signed the Release is further proof he believed the incidents to be wholly separate from each other and that signing the Release in the separate claim would not have an impact on this lawsuit.

By the time the City Defendants disclosed the release, the parties had exchanged initial disclosures and discovery demands, produced documents, conducted preliminary settlement discussions, and were preparing for a settlement conference with the Magistrate Judge. ECF 37. The day before the settlement conference, however, Counsel for the City unexpectedly notified Mr. Watson's attorneys that counsel had discovered the Release. *See* ECF 38. The City then filed its pre-motion conference letter asserting – for the first time in the years-old case – that the Release barred Mr. Watson's claims. *See* ECF 41. The City's twelfth-hour invocation of the Release has prevented the settlement process, and further litigation – including as to the claims against the FJC Defendants – from going forward.

## STANDARD OF REVIEW

Courts only grant judgment on the pleadings "if the moving party is entitled to judgment as a matter of law." *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999) (internal quotation marks omitted). A Court may grant a Rule 12(c) motion only if "it appears

beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998), citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). Therefore, a moving party is entitled to judgment as matter of law where it shows "that no material issue of fact remains to be resolved." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). When evaluating a Fed. R. Civ. P. 12(c) motion, the court must accept the allegations of the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Irish Lesbian & Gay Org. v. Giuliani*, at 644. "The standard is applied with particular strictness where the plaintiff complains of a civil rights violation." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (citations omitted). Here, the City Defendants have not met that standard, and the Court should deny their motion.

## ARGUMENT

I.    **The Court Should Deny the City Defendants' Motion Because They Failed to Raise An Affirmative Defense Related to the Release.**

Under Rule 8(c), affirmative defenses must be raised in the responsive pleading. *See* FRCP 8(c). A party's failure to raise such an affirmative defense amounts to waiver.

Defendant City's February 27, 2024 Answer (ECF 13) to Plaintiff's December 6, 2023 Complaint does not mention or assert any defense based on the Release, which was not signed until August 9, 2024. Though the Release had been executed a month before, the City Defendants' September 9, 2024 Amended Answer (ECF 28) to the FAC also does not mention or assert any defense based on the Release. Plaintiff pointed that out to the City Defendants in Plaintiff's July 28, 2025 response to their pre-motion conference letter (ECF 43), and they have not sought to amend.

Although "a district court may still entertain affirmative defenses at the summary judgment stage" when a defendant has not timely pleaded the affirmative defense, it may only do so "in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.,* 316 F.3d 337, 350 (2d Cir. 2003). The Second Circuit has been "most hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim." *Monahan v. NYC Department of Correction*, 214 F.3d 275, 284 (2nd Cir. 2000). In determining what constitutes "prejudice," courts consider whether the assertion of the defense would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Id.*

Here, the Court should decline to entertain any un-pleaded affirmative defense related to the Release, given the timing and prejudice to Plaintiff and the other parties in the litigation. In this connection, the City Defendants have not explained how they did not discover and disclose the existence of the Release earlier, during the many months they were searching for documents and information responsive to Plaintiff's interrogatories and discovery demands and investigating their defenses in this case. The surprise disclosure of the Release came as all of the parties were preparing for an imminent settlement conference before the Magistrate Judge.

Notably, if the Court grants the City Defendants' application, Plaintiff's claims against FJC and the remaining Individual Defendants would remain in play. And, if the Court denies it, the case would presumably go back onto the potential settlement track it had been proceeding down before.

Permitting the City to assert this un-pleaded defense at this stage of litigation would cause substantial prejudice to Mr. Watson, who has litigated this case in good faith for nearly three years, ranging from delays of his pursuit of his claims against both the City Defendants and the FJC Defendants, to potential foreclosure of his claims against the City Defendants.

## II. The Court Should Deny the City Defendants' Rule 12(c) Motion Because it Relies on Matters Outside the Pleadings.

The City Defendants styled their motion as one for judgment on the pleadings under Rule 12(c). A motion for judgment on the pleadings is limited to the face of the pleadings and any documents integral to them. FRCP 12(c).

In adjudicating a Rule 12(c) motion, a court may consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). A

complaint "is 'deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.* (citations omitted).

Here, the Release was neither attached to or referred to in the Complaint or FAC, nor integral to the pleadings. The City Defendants' motion is improper because it seeks to rely on the General Release – a document entirely outside the pleadings. Although Plaintiff pointed these matters out to the City Defendants in Plaintiff's response to the City Defendants' pre-motion conference letter (ECF 43), they have not taken any steps to amend the pleading to assert an affirmative defense related to the Release.

It would therefore be improper for the Court to consider the Release, and the Court should therefore dismiss the City Defendants' motion for judgment on the pleadings on that ground.

### III.    The Court Should Decline to Convert The City Defendants' Motion to a Summary Summary Judgment Motion Pursuant to Fed. R. Civ. P. 12(d), or, Alternatively, Allow for Limited Discovery.

If the Court considers the General Release, FRCP 12(d) would require the Court to construe the motion as one for summary judgment, in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *See* FRCP 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

The Court should decline to convert the City Defendants' motion to a summary judgment motion here. Doing so would cause Mr. Watson prejudice ranging from delays of his pursuit of his claims against both the City Defendants and the FJC Defendants, to potential foreclosure of

his claims against the City Defendants. And, applying the principles governing consideration of whether a purported "general release" was made knowingly and voluntarily discussed in the following points, ruling on a summary judgment motion on these issues would also require discovery regarding matters extrinsic to the Release surrounding its execution – for example, discovery of the Comptroller's claim file, communications between Mr. Watson's counsel in the case in which the Release was signed with the Comptroller's Office, as well as discovery of written and oral communications between Mr. Watson and his attorney.

Therefore, if the Court does convert this to a motion for summary judgment, it should allow limited discovery so that the motion can be decided based on a more complete record.

**IV.    The Release Should Not Bar Mr. Watson's Claims Here Because Mr. Watson Did Not Fairly and Knowingly Waive His Rights to Pursue his Claims in This Lawsuit.**

     **a.    If the Court gets to the merits of the City Defendants' application, the proper inquiry is whether the release was knowing and voluntary.**

At the outset, although not cited in the City Defendants' papers, Plaintiff acknowledges that the Second Circuit has, in unpublished, non-precedential decisions, enforced general releases in dismissing actions asserting federal civil rights claims, applying New York contract principles – even recently. *See, e.g., Caraballo v. City of New York*, 2025 U.S. App. LEXIS 12041 (2d Cir. 2025). Past that, Plaintiff also acknowledges that some New York courts have also done so – even recently. *See, e.g, Smith v. City of New York*, 236 A.D.3d 414 (1st Dep't 2025). In *Smith*, a divided panel enforced a general release against a plaintiff who had filed two separate lawsuits arising from distinct arrests. The majority of three applied contract law and principles and found the release it was considering precluded the claims at issue.

The two *Smith* dissenters, however, relying on long-standing New York precedent, held that "'a release may not be read to cover matters which the parties did not desire or intend to

dispose of.'" *Id.* at 419, quoting *Cahill v. Regan*, 5 N.Y.2d 292, 299 (1959) and citing *Morales v Solomon Mgt. Co., LLC*, 38 A.D.3d 381, 382 (1st Dep't 2007). The *Smith* dissent notes that allowing defendants to "surreptitiously dispose of a viable action" via boilerplate language "sets a bad precedent, allows parties to engage in unfair settlement practices, and is unfair and unjust," and that "Defendants should not be permitted, and to an extent even incentivized, to lead a plaintiff into believing that they are settling a particular action, when their aim is, unbeknown to plaintiff, to dispose of every other claim a plaintiff has asserted in a separate action." 236 AD3d at 419. The dissenters further emphasized that when multiple, unrelated claims are involved, the "meaning and extent of coverage of a release depends upon the controversy being settled and upon the purpose for which it was given." *Id.* at 420. And, ultimately, under the principles articulated in the *Smith* dissent, as the Court of Appeals recognized in *Cahill* (quoted above), and later in *Mangini v. McClurg*, 24 N.Y.2d 556, 563 (1969), a release must be "fairly and knowingly made," *Mangini*, 24 NY2d at 566, *et seq.*, and certainly "may not be read to cover matters which the parties did not desire or intend to dispose of," *Cahill*, 5 NY2d at 299.

In *Mangini*, the New York Court of Appeals held that "special rules" apply to general releases in the personal injury context — particularly where the release was not "fairly and knowingly made." 24 N.Y.2d at 562. The Court went on to explain that putative general releases do not automatically bar recovery in unrelated cases due to the "realistic recognition that releases contain standardized, even ritualistic, language and are given in circumstances where the parties are sometimes looking no further than the precise matter in dispute that is being settled," such that "the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form. *Mangini v. McClurg*, 24 N.Y.2d at 562. Similarly, in *Dury v. Dunadee*, 52 A.D.2d 206 (4th Dep't 1976), the Fourth

Department emphasized that a release must be construed under "highly specialized rules of interpretation." 52 A.D.2d at 208.But, "where the language of the release is clear, effect must be given to the intent of the parties as indicated by the language employed." *In re Schaefer*, 18 NY2d 314, 317 (1966).

"In order to be entitled to dismissal of an action based upon a release, the movant must show that the release was intended to cover the subject action or claim . . . . The meaning and coverage of a general release depends upon the purpose for which the release was actually given, and a general release may not be read to cover matters which the parties did not desire or intend to dispose of." *Mazzurco v. PII Sam, LLC*, 153 A.D.3d 1341, 1342 (2d Dep't 2017) (internal citations and quotations omitted).

In other words, "[a] release that employs general terms will not bar claims outside the parties' contemplation at the time the release was executed." *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 299 (S.D.N.Y. 2004) (citing *Estes v. New York State Saddle Horse Ass'n Inc.,* 188 A.D.2d 857, 859 (3d Dep't 1992)). So, even when a release includes broad language that would seemingly encompass a claim, courts will "limit" the effect of the release "to those claims within the contemplation of the parties at the time." *In re Actrade Fin. Techs., Ltd.,* 424 B.R. 59, 69-71 (Bankr. S.D.N.Y. 2009) (discussing New York law); *see also Gardstein v. Kemp & Beatley, Inc.*, No. 82 CIV. 0781 (MEL), 1987 WL 7378, at *1-2 (S.D.N.Y. Feb. 20, 1987) (same).

Moreover, while many of the releases at issue in the cases discussed above have been called "General Release" and include boilerplate general language, courts in New York have repeatedly found that such general language alone does not conclusively demonstrate that the release at issue was meant to cover other, unrelated claims. *See, e.g., Peralta v. City of New*

*York*, 2022 U.S. Dist. LEXIS 229972 (SDNY 2002). "A release may contain specific recitals as to the claims being released, and yet conclude with an omnibus clause" that "releases and discharges all claims and demands whatsoever which [the releasor] . . . [has] or may have against the releasee." *Green v. Lake Placid 1980 Olympic Games, Inc*., 147 A.D.2d 860, 538 (App. Div. 3d. 1989); *Campos v. Aegis Realty Mgmt. Corp*., at 9 ("[C]ourts applying New York law have looked beyond the language of a general release and to the context in which it was entered into in determining the scope of that release."); *Vornado Realty Tr. v. Castleton Env't. Contractors, LLC*, No. 08 Civ. 4823 (DLI), 2011 WL 4592800, at *4 (E.D.N.Y. Sept. 30, 2011) ("It is well recognized in New York that where 'form' releases are used, the 'standardized, even ritualistic, language' of the 'form' will give way to the parties' actual intent, thus, subordinating the boilerplate terms of the standardized contract." (quoting *Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (SWK), 1993 WL 410465, at *11 (S.D.N.Y. Oct. 8,1993). In such cases, courts have "held that the general words of a release are limited by the recital of a particular claim, where there is nothing on the face of the instrument, other than general words of release, indicating that matters other than those specifically referred to were intended to be discharged." *Id.*

Additionally, New York courts have often limited the application of broadly-worded, purportedly "general" releases where there are signs of unfairness, such as where a releasor does not understand the true scope and impact of the release, or where the consideration involved in the case in which the release is executed is small in light of the damages or potential recovery involved in the unrelated matter at issue. *See, e.g., Huang v. Llerena-Salazar,* 222 A.D.3d 1033, 1034 (2d Dep't 2023) (unfair circumstances included a lack of explanation of the "legal effect of the release"); *Paulino v. Braun,* 170 A.D.3d 506, 506 (1st Dep't 2019) (small consideration); *Johnson v. Lebanese Am. Univ.,* 84 A.D.3d 427, 431 (1st Dep't 2011) ("While courts do not

ordinarily question the amount of consideration supporting an agreement, it is appropriate to consider whether a relatively small amount of consideration paid to a releasor in exchange for signing a release suggests that the scope of the release is narrower than is urged by the releasee.")

Federal courts applying New York law have followed the New York caselaw discussed in the *Smith* dissent and above, asking whether a release was "fairly and knowingly made," not merely whether its text was clear. *Campos v. Aegis Realty Mgmt. Corp.*, 2020 US Dist LEXIS 14138, at *22 (SDNY 2020). For example, just last year, Magistrate Judge Jennifer E. Willis applied these principles in *Dahkeem Miller, et al. v. City of New York, et al.,* SDNY Docket Number 21-cv-02616 (PKC)(JW). *See* September 26, 2024 Transcript in *Dahkeem Miller, et al. v. City of New York, et al.* (ECF 43-1, the "Miller Tr.") at pp. 5-7 (internal quotations omitted). In *Miller,* Magistrate Judge Willis recognized that, under New York law, there are "special rules" for considering "general releases" – especially such releases made in the personal injury context - "which require the Court to determine whether a release…was 'fairly and knowingly made'", employing "a totality of the circumstances standard" in making that determination. *See* September 26, 2024 Transcript in *Dahkeem Miller, et al. v. City of New York, et al.* at pp. 5-7 (internal quotations omitted). In considering the release at issue in *Miller,* Judge Willis considered, among other things, "the relatively low amounts the cases were settled for…the City's own course of conduct…and…the listing of the index numbers of those cases on the releases in the settled cases" in ultimately finding that the release at issue in *Miller* could not bar the plaintiffs' claims. Miller Tr. p. 7. Applying those principles here, the focus of determining whether Mr. Watson waived his civil rights and other claims in this lawsuit should be on whether

he understood the rights he was giving up by signing, not whether the form waiver language in the release was broad enough to cover his claims here.

More recently, in *Chris Terry v. City of New York, et al.,* EDNY Docket Number 23-CV-5955 (NRM)(JRC), after the parties had fully briefed a motion to dismiss based on a general release in which the City advanced many of the same argumenst the City Defendants are making here, Hon. Nina R. Morrison issued a text-only order directing supplemental briefing as to a whether a different standard in fact applies under federal law, given the important constitutional claims at issue:

> Second, in review of the motion papers, the Court has identified certain issues on which it may benefit from supplemental briefing. The Court notes that there are many cases that are non-precedential or otherwise persuasive authority that inform how the Court could resolve Defendants' motion. However, the Court is also aware of a body of law regarding releases in the context of federal employment discrimination cases that employs a multi-factor test in determining whether such releases were knowingly and voluntarily entered, due to the "strong Congressional purpose... to eradicate discrimination in employment." *See Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 129 (S.D.N.Y. 2012) (quoting *Kristoferson v. Otis Spunkmeyer, Inc.*, 965 F. Supp. 545, 548 (S.D.N.Y. 1997)). The Court requests supplemental briefing on how, if at all, elements of the test applied in the federal employment discrimination context applies in the context of releases implicating future claims of a constitutional dimension, including claims like Plaintiff's raised through 42 U.S.C. § 1983. Additionally, the Court requests supplemental briefing on how Plaintiff's education level, literacy level, and his relationship and interactions with counsel when considering the general release may or may not implicate the validity of the general release he signed.

3/22/25 Text-Only Order in *Terry*; *see also, e.g., Bormann v. AT & T Communications, Inc.,* 875 F.2d 399 (2nd Cir. 1989), *cert. denied*, 493 U.S. 924 (1989) (the focus should be on whether any purported waiver at issue was knowing and voluntary).

Under this line of cases, courts in this Circuit have applied a multi-factor test to determine whether a plaintiff knowingly and voluntarily waived constitutional rights. *See Bormann,* 875 F.2d at 403. The relevant factors include: 1) the plaintiff's education and business

experience, 2) the amount of time the plaintiff had possession of or access to the agreement

before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of

the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6)

whether the consideration given in exchange for the waiver exceeds employee benefits to which

the employee was already entitled by contract or law. *Id.*

  After *Bormann*, courts in the Second Circuit have looked at the totality of the

circumstances in deciding whether a plaintiff knowingly and voluntarily waived rights under

federal employment discrimination laws. *See, e.g., See, e.g., Laniok v. Advisory Comm. Of

Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1367-68 (2nd Cir. 1991) (Employee Retirement

Income Security Act); *Kristoferson v. Otis Spunkmeyer, Inc.,* 965 F.Supp. 545, 546-57 (SDNY

1997) (Title VII); *Okoro v. Marriott Int'l, Inc.,* No. 07 Civ. 165, 2007 WL 980429, at *1-2

(SDNY Apr. 3, 2007) (Americans with Disabilities Act); *Pucilowski v. Spotify USA, Inc.,* No. 21

Civ. 1653, 2022 WL 836797, at *1, 4 (SDNY Mar. 21, 2022), *aff'd*, 2022 WL 16842926 (2nd Cir.

Nov. 10, 2022) (Family Medical Leave Act). Under those cases, "[t]he essential question is a

pragmatic one: whether, in the totality of the circumstances, the individual's waiver of his rights

can be characterized as 'knowing and voluntary.'" *Laniok*, 935 F.2d at 1368.

  The Second Circuit took up that "totality of the circumstances" test in *Bormann* because

it reasoned that the test was "consistent with the strong congressional purpose underlying the

ADEA to eradicate discrimination in employment" and the need in light thereof to look carefully

at any case where a person whose rights may have been deprived "bargains away" the right to

seek redress. *Bormann*, 875 F.2d at 403. It makes sense for courts to apply the test in connection

with claims brought under Section 1983, given that its "central purpose" is "to provide

compensatory relief to those deprived of their federal rights by state actors," *Felder v. Casey*,

487 U.S. 131, 141 (1988), even authorizing attorney's fees under 42 USC 1988, "incidat[ing] a strong Congressional intent to encourage private enforcement of the nation's civil rights statutes…" *McCann v. Coughlin*, 698 F.2d 112, 128 (2nd Cir. 1983).

Therefore, while *Caraballo* and the *Smith* majority's decision reflect one approach, the approaches employed in *Miller* and *Terry*, as well as the *Smith* dissent, represent the better-reasoned ones, and are the most consistent with the federal and New York precedents discussed above. As seen in those cases, in determining the appropriate effect of a release, both federal and New York courts have looked beyond the four corners of the document when considering the context in which a release was entered into and asked whether a release was fairly, knowingly, and voluntarily made, not merely whether its text on its face was clear. *See, e.g., Campos v. Aegis Realty Mgmt. Corp.*, 2020 US Dist LEXIS 14138, at *22.

If the Court gets to the merits on the City Defendants' application, the fairness-based standard under which a release of claims such as those at issue here is valid only if it was "fairly and knowingly made" is the one the Court should apply here.

**b.    Plaintiff Did Not Knowingly and Voluntarily Waive His Claims in This Incident.**

Mr. Watson's declaration makes a threshold showing that he did not knowingly and voluntarily waive his rights to pursue his civil rights and tort claims against the City Defendants here. Mr. Watson had limited education, no business experience, and no legal sophistication. He has experienced years of unstable housing, has not held jobs that required dense paperwork filled with legalese, and is generally inexperienced with complicated documents such as the Release. The Release was presented to him as a routine administrative form for a minor settlement by counsel. The Release's language is dense and legalistic, with no mention of this case. The Release specifically refers to the respective claim number being settled, referring to the

Comptroller's claim number (2022PI023821). Additionally, the subject matter of the boilerplate release—the 2022 NYPD incident—bears no relation to the HRA assault. And the $3,000 consideration is nominal and disproportionate to the gravity of his injuries in this case. Those facts underscore Mr. Watson's understanding that the parties intended it to resolve only that matter, not that the terms of this Release would extend to unrelated civil rights and serious tort claims pending in federal court.

New York courts have cautioned that reading boilerplate releases to bar distinct claims risks turning them into "a trap for the average man." *Wells v. Shearson Lehman/American Express*, 72 N.Y.2d 11, 22 (1988). Mr. Watson's case exemplifies that concern. Using general contract principles, the City seeks to stretch a boilerplate form — executed in an unrelated $3,000 settlement — to wipe out his constitutional claims for significant physical injuries, the effects of which are ongoing. Mr. Watson -- a layperson with no understanding of the legal scope of the Release - should not lose his right to hold public actors accountable simply because he inadvertently did not include the pending case as an exclusion in the Release. To hold otherwise would unjustly extinguish constitutional rights and the right to recover for serious injuries in exchange for a nominal settlement of an unrelated claim, and work a serious injustice.

Therefore, if the Court reaches the substantive issue of whether the Release should preclude Mr. Watson's claims in this case, the Court should find that it does not, because Mr. Watson did not knowingly and voluntarily raise them in the Release. Alternately, to the extent there are questions of fact to be resolved, Plaintiff respectfully asks the Court to allow limited discovery related to the Release.

## CONCLUSION

For the foregoing reasons, the Court should deny the City Defendants' motion for judgment on the pleadings in its entirety. In the alternative, Plaintiff respectfully requests that the Court allow limited discovery related to the Release.

Dated: Brooklyn, NY
October 13, 2025

**GIDEON ORION OLIVER**

277 Broadway, Suite 1501
New York, NY  10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com


**COHEN&GREEN P.L.L.C.**

/s/
By: _____
Regina J. Yu*
1639 Centre Street, Suite 216
Ridgewood, NY 11385
t: (929) 888.9480
f: (929) 888.9457
regina@femmelaw.com
*admission pending


*Attorneys for Plaintiff*