# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X

KOREY WATSON

Case No. 23-cv-8975 (LDH) (CHK)

Plaintiff,

-v-

CITY OF NEW YORK, FJC SECURITY SERVICES, SABRINA DUNCAN, ASHLEY JOHNSON, KERN PROHIBERBS, NATASIA LYLES, TAMIKA JENKINS, PATRICIA ROBINSON, and SEAN WILLIAMS,

Defendants.

------------------------------------------------------X

**BRIEF *AMICUS CURIAE* OF PROFESSOR ALEXANDER A. REINERT**

Alexander A. Reinert
55 Fifth Avenue, Room 1005
New York, NY 10003
(646) 592-6543

*Attorney for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii
INTERESTS OF *AMICUS CURIAE* ..... 1
PRELIMINARY STATEMENT ..... 1
ARGUMENT ..... 2
I. THE RELEASE EXECUTED BY PLAINTIFF DOES NOT BAR RECOVERY IN THIS ACTION ..... 2
A. New York Law Prohibits the Use of a Broadly Worded Prior Release to Bar the Claims in This Action ..... 2
1. The Boilerplate Language Contained in the Prior Release Is Insufficient to Bar Claims in This Civil Rights Action ..... 2
2. The Context in Which the Release Was Negotiated Militates Strongly Against Applying It to Bar Claims in This Class Action ..... 5
3. The Language Used In Mr. Watson's "General" Release Is Treated as Ambiguous Under New York Law ..... 11
B. Applying the Release to Bar Claims in This Case Would Raise Serious Constitutional Questions ..... 12
CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Cases**

*Agency for International Development v. Alliance for Open Society International, Inc.*, 570 U.S. 205 (2013) .... 13

*Augustin v. The City of New York*, No. 15290/2014, 2022 WL 1081235 (Sup. Ct., Kings Cty. Mar. 31, 2022) .... 7

*Auten v. Auten*, 308 N.Y. 155 (1954) .... 2

*Best v. Yutaka*, 90 N.Y.2d 833(1997) .... 9

*Booth v. 3669 Delaware, Inc.*, 92 N.Y.2d 934 (1998) .... 10

*Cahill v. Regan*, 5 N.Y.2d 292 (1959) .... 5, 6, 8

*Campos v. Aegis Realty Mgmt. Corp.*, No. 19 Civ. 2856, 2020 WL 433356 (S.D.N.Y. Jan. 28, 2020) .... 4, 7

*Caraballo v. City of New York*, 24-2051, 2025 WL 1430152 (2d. Cir. May 19, 2025) .... 11

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269 (2011) .... 10

*Chiappone v. North Shore University Hospital*, 164 A.D.3d 463 (2d Dep't 2018) .... 8, 9, 12

*Cuadrado v. Zito*, No. 13 Civ. 3321, 2014 U.S. Dist. LEXIS 57184 (S.D.N.Y. Mar. 21, 2014) .... 10

*Dinkins v. Harris*, No. 15 Civ. 8914, 2016 U.S. Dist. LEXIS 85277 (S.D.N.Y. June 29, 2016) .... 10

*Dolan v. City of Tigard*, 512 U.S. 374 (1994) .... 14

*Dury v. Dunadee*, 52 A.D.2d 206 (4th Dep't 1976) .... 7, 8, 12

*Estes v. New York State Saddle Horse Ass'n Inc.*, 188 A.D.2d 857 (3d Dep't 1992) .... 5

*Gardstein v. Kemp & Beatley, Inc.*, No. 82 Civ. 0781, 1987 WL 7378 (S.D.N.Y. Feb. 20, 1987) 6

*Glassberg v. Lee*, 82 A.D.3d 836 (2d Dep't 2011) .... 4

*Harris v. McRae*, 448 U. S. 297 (1980) .... 14

*Haynes v. Garez*, 304 A.D.2d 714 (2d Dep't 2003) .... 9

*Horton v. Empire Bail Bonds*, No. 09 Civ. 1635, 2010 U.S. Dist. LEXIS 44958 (E.D.N.Y. May 7, 2010) .... 10

*In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59 (Bankr. S.D.N.Y. 2009) .... 5

*Interpool Ltd. v. Patterson*, No. 89 Civ. 8501, 1993 WL 410465 (S.D.N.Y. Oct. 8, 1993) .... 4

*Johnson v. Lebanese Am. Univ.*, 84 A.D.3d 427 (1st Dep't 2011) .... 9, 12

*Johnson v. Thruway Speedways, Inc.*, 63 A.D.2d 204 (3d Dep't 1978) .... 5

*Lefrak SBN Assocs. v. Kennedy Galleries, Inc.*, 203 A.D.2d 256 (2d Dep't 1994) .... 9

*Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548 (2001) .... 15

*Lloyd v. the City of New York*, 15 Civ. 8539, 2017 U.S. Dist. LEXIS 77716 (S.D.N.Y. May 22, 2017) .......... 10

*Lucio v. Curran*, 2 N.Y.2d 157 (1956) .......... 3, 4

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293 (S.D.N.Y. 2004) ..... 5

*Mangini v. McClurg*, 24 N.Y.2d 556 (1969) .......... 2, 4

*Mateo v. Carinha*, 799 F. App'x 51 (2d Cir. 2020) .......... 9

*Mazzurco v. PII Sam, LLC*, 153 A.D.3d 1341 (2d Dep't 2017) .......... 4, 7

*Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) .......... 13

*Oakes v. Patel*, 20 N.Y. 3d 633 (2013) .......... 9

*Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10 (2d Cir. 1993) .......... 2

*Peralta v. City of New York*, No. 19-CV-7565, 2022 WL 17832324 (S.D.N.Y. Dec. 21, 2022) ... 4

*Pinto v. Allstate Ins. Co.*, 221 F.3d 394 (2d Cir. 2000) .......... 5

*Ruskay v. Waddell*, 552 F.2d 392 (2d Cir. 1977) .......... 9, 10

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 655 B.R. 149 (Bankr. S.D.N.Y. 2023) 5

*Siddons v. the City of New York*, No. 17 Civ. 4017, 2019 U.S. Dist. LEXIS 10119 (E.D.N.Y Jan. 7, 2019) .......... 10

*Vornado Realty Trust v. Castleton Env't. Contractors, LLC*, No. 08 Civ. 4823 2011 WL 4592800 (E.D.N.Y. Sept. 30, 2011) .......... 4, 12

**INTERESTS OF *AMICUS CURIAE***

Professor Alexander A. Reinert is the Max Freund Professor of Litigation and Advocacy at the Benjamin N. Cardozo School of Law.[1] He is a legal scholar with expertise in civil procedure, constitutional law, and federal courts, among other disciplines. He researches and teaches in all of these areas and has a particular scholarly focus on civil procedure and civil rights remedies, having authored or coauthored numerous articles regarding civil rights litigation and procedure.[2] Professor Reinert seeks leave to participate as *amicus* in this case to address how both New York law and federal constitutional law relate to the City Defendants' motion for judgment on the pleadings (ECF No. 44).

**PRELIMINARY STATEMENT**

City Defendants take a deeply troubling position in the instant case by relying on a supposed "general release" that it obtained in an entirely unrelated case to bar Plaintiff Korey Watson from recovering damages for the significant civil rights violation he has alleged. Plaintiff has presented evidence that he had no indication that by accepting a settlement in the prior case, he waived his right to compensation in this case. See Decl. of Korey Watson ("Watson Decl.") ¶¶ 6, 15-17 (ECF No. 46-1). As discussed below, City Defendants' argument must be rejected because enforcing the general release to bar claims in this action would be inconsistent with both New York and federal constitutional law. Under New York law, the generic boilerplate contained in the release at issue cannot be read as sweepingly as City Defendants urge,

---

[1] Institutional affiliation is provided for purposes of identification only. The undersigned certifies that this brief was not authored in whole or in part by any party's counsel, and that no one other than your *amicus* contributed any funds to prepare or submit this brief.

[2] As a matter of full disclosure, Professor Reinert also is class counsel for the plaintiffs in *Miller v. City of New York*, 21 Civ. 2616 (S.D.N.Y.), in which the parties litigated the applicability of purported "general releases" to unrelated civil rights litigation. He seeks leave to participate in this matter based on his scholarly expertise, not based on his representation of the class in *Miller*.

particularly given the context in which the release was obtained. Under federal law, treating the release at issue in this case as a "general release" would amount to imposing an unconstitutional condition on plaintiff.

## ARGUMENT

### I. THE RELEASE EXECUTED BY PLAINTIFF DOES NOT BAR RECOVERY IN THIS ACTION

City Defendants contend that Plaintiff should be barred from receiving any recovery in this action because he entered into a release with the City in an entirely unrelated matter. Governing New York contract law and federal constitutional principles foreclose this argument.

#### A. New York Law Prohibits the Use of a Broadly Worded Prior Release to Bar the Claims in This Action

##### 1. The Boilerplate Language Contained in the Prior Release Is Insufficient to Bar Claims in This Civil Rights Action

City Defendants contend that a release signed by the Plaintiff in an entirely unrelated matter containing broadly worded boilerplate that the City drafted should bar him from pursuing a claim concerning his fundamental constitutional rights. But New York law cautions courts to read allegedly "general" releases in the litigation context in which they arose, giving them a limited reading when necessary to achieve equitable results.[3]

As New York's highest court explained in *Mangini v. McClurg*, 24 N.Y.2d 556, 562 (1969), putative general releases do not automatically bar recovery in entirely unrelated cases

[3] New York state law controls interpretation of the release here. *Auten v. Auten*, 308 N.Y. 155, 161-62 (1954). Even if federal law applied, New York law has been incorporated into the federal common law by the Second Circuit. *See Olin Corp. v. Consol. Aluminum Corp*., 5 F.3d 10, 15 (2d Cir. 1993) (finding that it is "settled" in the Second Circuit that, even if federal common law governs the effect of releases on federal causes of action, federal courts in New York will look to New York law to determine the content of federal contract law).

because of the "realistic recognition that releases contain standardized, even ritualistic, language and are given in circumstances where the parties are sometimes looking no further than the precise matter in dispute that is being settled," such that "the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form." *Id.* Thus contrary to City Defendants' simplistic assertions, one cannot simply assert that a release's language is "comprehensive and unequivocal" (ECF 48, Reply Br. 4) without examining the context in which it was negotiated. This jurisprudence cannot be assumed away even if it is inconvenient for City Defendants' litigating position.

*Mangini* and its progeny – including many federal courts that have applied this New York law – establish that the release at issue here should be limited to its context. *Mangini* itself distinguished a situation like the instant case – in which the context suggests that a boilerplate general release cannot be given a broad reading -- from a case in which "an unreformed general release will be given its full literal effect where it is directly or circumstantially evident that the purpose is to achieve a truly general settlement." *Mangini*, 24 N.Y.2d at 562. As an example of the latter situation, *Mangini* cited to *Lucio v. Curran*, 2 N.Y.2d 157 (1956), which found that a general release was enforceable according to its terms because of the specific context of the case. In *Lucio*, *contra* this case, the plaintiff first proposed a *limited* release and agreed to sign a general release (also prepared by the plaintiff) because the defendant "insisted that only a general release disposing of 'any and all claims this plaintiff could possibly have had' would be acceptable." 2 N.Y. 2d at 160. Thus, the general release was enforced in *Lucio* because the release itself was the product of a "deliberate, prolonged negotiation between the parties." *Id.* at 161. That context matters, and it is far from the situation presented by this case.

*Mangini* and *Lucio* establish that broad language in a release does not automatically apply to bar claims in subsequent unrelated actions. Rather, to determine whether the words of a general release must be given their literal effect, one must first examine whether "it is directly or circumstantially evident that the purpose is to achieve a truly general settlement." *Mangini*, 24 N.Y.2d at 562. "In order to be entitled to dismissal of an action based upon a release, the movant must show that the release was intended to cover the subject action or claim . . . . The meaning and coverage of a general release depends upon the purpose for which the release was actually given, and a general release may not be read to cover matters which the parties did not desire or intend to dispose of . . . ." *Mazzurco v. PII Sam, LLC*, 153 A.D.3d 1341, 1342 (2d Dep't 2017) (citations and internal quotation marks omitted). "[U]nless it is shown that a specified matter was in dispute at the time a purported release was given, it cannot be held to bar the releasor's rights as to that matter." *Glassberg v. Lee*, 82 A.D.3d 836, 837 (2d Dep't 2011) (citations omitted).

In other words, "courts in New York have repeatedly found that general language alone does not conclusively demonstrate a general release." *Peralta v. City of New York*, No. 19-CV-7565, 2022 WL 17832324, at *4 (S.D.N.Y. Dec. 21, 2022); *Campos v. Aegis Realty Mgmt. Corp.*, No. 19 Civ. 2856, 2020 WL 433356, at *9 (S.D.N.Y. Jan. 28, 2020) ("[C]ourts applying New York law have looked beyond the language of a general release and to the context in which it was entered into in determining the scope of that release."); *Vornado Realty Trust v. Castleton Env't. Contractors, LLC*, No. 08 Civ. 4823, 2011 WL 4592800, at *4 (E.D.N.Y. Sept. 30, 2011) ("It is well recognized in New York that where 'form' releases are used, the 'standardized, even ritualistic, language' of the 'form' will give way to the parties' actual intent, thus, subordinating the boilerplate terms of the standardized contract." (quoting *Interpool Ltd. v. Patterson*, No. 89 Civ. 8501, 1993 WL 410465, at *11 (S.D.N.Y. Oct. 8, 1993)).

**2. The Context in Which the Release Was Negotiated Militates Strongly Against Applying It to Bar Claims in This Class Action**

Judge P. Kevin Castel has succinctly summarized the governing law: "'[A] release like any contract must be construed to give force and effect to the intention of the parties.'" *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293, 299 (S.D.N.Y. 2004) (Castel, J.) (quoting *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 404 (2d Cir. 2000)). "'The instrument of release must be strictly construed.'" *Id*. (quoting *Johnson v. Thruway Speedways, Inc.*, 63 A.D.2d 204, 205 (3d Dep't 1978)). "A release that employs general terms will not bar claims outside the parties' contemplation at the time the release was executed." *Id*. (citing *Estes v. New York State Saddle Horse Ass'n Inc.*, 188 A.D.2d 857, 859 (3d Dep't 1992)).

Because the broad boilerplate language contained in the release at issue does not automatically bar the disputed claims, this Court must look to the litigation context in which the release was executed. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 655 B.R. 149, 177-78 (Bankr. S.D.N.Y. 2023) ("Mere use of general language is not sufficient to evidence a release of unrelated claims."). New York law has long provided that "a release should not be construed to dispose of matters which the parties themselves did not desire or intend." *Cahill v. Regan*, 5 N.Y.2d 292, 299 (1959). Thus, even where a release employs broad language seemingly encompassing a claim, courts will "limit[ ] [it] to those claims within the contemplation of the parties at the time" as evidenced from the purpose for which the release was given and the context in which it was signed. *In re Actrade Fin. Techs., Ltd.*, 424 B.R. 59, 69-71 (Bankr. S.D.N.Y. 2009) (surveying New York law). Here, as evidenced by the language of the release itself and the evidence provided by Plaintiff, City Defendants cannot show that the release should have the broad application they now maintain.

In *Cahill*, the question was whether a general release executed in a replevin action barred a later patent action. The New York Court of Appeals held that the general release would not apply in the subsequent action for several reasons that resonate here. First, "[w]hen the releases were executed . . . the parties were solely concerned with settling the controversy then being litigated." 5 N.Y. 2d at 299. Second, the patent action had "no relation" to the prior action. *Id.* Under those circumstances – on all fours with the facts here – the Court of Appeals held that New York law requires interpreting the release as "cover[ing] and barr[ing] only those matters about which there had been some dispute." *Id.*

Federal courts apply this settled New York law to the same effect. In *Gardstein v. Kemp & Beatley, Inc.*, No. 82 Civ. 0781, 1987 WL 7378, at *1-2 (S.D.N.Y. Feb. 20, 1987), the plaintiff had released the defendant in a prior shareholders' action "from all actions, causes of action, suits, . . . controversies, . . . damages, judgments, . . . and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, . . . every had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE." *Id.* The defendant argued that this broad language included the Age Discrimination in Employment Act ("ADEA") claim that the plaintiff brought in a subsequent action, but the plaintiff maintained that he did not intend for the release to cover his ADEA claim. The Court ruled for the plaintiff, applying *Mangini* and other New York cases to hold that the language of the release did not unambiguously establish its meaning, and that the "circumstances surrounding its execution" were relevant to whether the parties intended the broad language to release the employment-related ADEA claim. *Id.*

These rules have particular resonance in personal injury claims such as those that gave rise to the release on which City Defendants rely. *Dury v. Dunadee*, 52 A.D.2d 206, 208-09 (4th

Dep't 1976) (referring to "highly specialized rules of interpretation" for releases arising out of personal injury claims). In *Dury*, the release's broad language "would seem on its face to include" the claim for contribution brought in the subsequent action, *id.*, but the court nonetheless held that the release was ambiguous and could not be read to encompass claims that had not been bargained for or discussed in the negotiations leading to the execution of the release. *Id.*; *see also Campos v. Aegis Realty Mgmt. Corp.*, No. 19 Civ. 2856 (KPF), 2020 WL 433356, at *9 (S.D.N.Y. Jan. 28, 2020) (refusing to apply release to bar claims where there was no indication that they were contemplated by the parties, even where text of release "standing alone" encompasses unknown claims).

The release at issue here makes clear that the context in which it was negotiated was limited to the specific claims at issue in the prior action. First, the release begins with the Comptroller's PI number for the claim at issue. *See* ECF 44-2 at 1. Courts have held that where such a specific citation to the case being settled is followed even by sweeping boilerplate language, the specific citation cuts against reading the release as a broad general release. *See, e.g.*, *Augustin v. The City of New York*, No. 15290/2014, 2022 WL 1081235, at *2 (Sup. Ct., Kings Cty. Mar. 31, 2022) ("Here, although the release language is broad, the inclusion of only the *Augustin I* case caption and index number can be read as a limiting factor upon which the release language applied."). Courts recognize, in other words, that "[i]f the recitals in the release appear to limit the release to only certain claims, demands, or obligations, the release will operate only as to those matters." *Mazzurco v. PII Sam, LLC*, 153 A.D.3d 1341, 1342, 63 N.Y.S.3d 59, 60 (App Div. 2d Dep't 2017) (cleaned up). On this ground alone, the Court should construe the release as limited to the specific claim that it referenced and resolved.

This reading is confirmed by the evidence submitted by the Plaintiff attesting to the fact that when the release was executed, the parties were focused on negotiating consideration for the specific claim that was then at issue, not other claims. *See* Watson Decl. ¶¶ 15-17 (ECF No. 46-1). This evidence demonstrates that "[w]hen the releases were executed . . . the parties were solely concerned with settling the controversy then being litigated." *Cahill*, 5 N.Y. 2d at 299; *see also Dury*, 52 A.D.2d at 208-09.

*Chiappone v. North Shore University Hospital*, 164 A.D.3d 463, 464-65 (2d Dep't 2018), is instructive. There, the plaintiff had two separate actions against the defendant. The first arose from an October 2009 procedure in which the plaintiff's husband suffered a perforated duodenum, allegedly as a result of malpractice. The plaintiff and her husband brought a medical malpractice action in July 2010 seeking damages for those injuries. While that action was pending, but before it settled, the plaintiff's husband was admitted again to the defendant's care, during which he fell and fractured his right pelvis, which allegedly led to complications that caused his death. Before the plaintiff filed an action seeking compensation for injuries from the second incident, the first action settled pursuant to a general release with broad language, similar to the boilerplate on which City Defendants rely here. After the plaintiff filed suit for damages from the second incident, the defendant moved to dismiss, relying on the general release executed in the first action. There was no question that the plaintiff was aware of the incident that gave rise to the second claim for damages, but because the incident was not yet "in dispute" at the time the first release was executed, the Court held that the second claim was not barred. *Id.* ("While the plaintiff may have been aware of the incident giving rise to Action No. 2 when she signed the release, any such awareness is insufficient, itself, to establish that the release was

intended to cover any potential claims which were not the subject of Action No. 1."). The Court's holding in *Chiappone* precludes enforcement of the general release here.

It also bears emphasis that the release at issue was obtained by settling Plaintiff's claim for very a small sum compared to the compensation at stake here. This imbalance is yet another reason to deny City Defendants' motion. *See Johnson v. Lebanese Am. Univ*., 84 A.D.3d 427, 431 (1st Dep't 2011) ("While courts do not ordinarily question the amount of consideration supporting an agreement, it is appropriate to consider whether a relatively small amount of consideration paid to a releasor in exchange for signing a release suggests that the scope of the release is narrower than is urged by the releasee."); *see also Best v. Yutaka*, 90 N.Y.2d 833, 834 (1997), *overruled on other grounds by Oakes v. Patel*, 20 N.Y.3d 633 (2013); *Haynes v. Garez*, 304 A.D.2d 714, 715-16 (2d Dep't 2003); *Lefrak SBN Assocs. v. Kennedy Galleries, Inc.*, 203 A.D.2d 256, 256-57 (2d Dep't 1994).

City Defendants cite several cases to support their contention that this Court's inquiry should begin and end with the broad language contained in the release at issue here. Mem. Of Law in Supp. Of Defendants' Mot. For Judgment on the Pleadings 4-6 (ECF 44-4); Reply Mem. Of Law 4 (ECF No. 48). But they do not suffice to support City Defendants' argument for a variety of reasons. One Second Circuit decision, *Mateo v. Carinha*, 799 F. App'x 51 (2d Cir. 2020), is unreported and in any event the parties there did not engage in any meaningful way with the controlling New York law relevant to this issue. Along similar lines, *Ruskay v. Waddell*, 552 F.2d 392 (2d Cir. 1977), did not appear to interpret New York law and in any event related to the effect of a limited release, not a purported "general" release.[4] Three of the district court

[4] The Second Circuit at times referred to the release at times a s a "general release," *see e.g*., 552 F.2d at 395 n.4, but that was in response to the plaintiffs' argument that the prior release settled only the claims actually asserted in the prior case. The court rejected that argument, making it clear that what had been released was all claims relating to the sale of the company at issue in *Ruskay*. *See id*. at 395. In that

cases relied upon by City Defendants involved a *pro se* litigant in which the court treated the language as unambiguous contrary to controlling New York law. *Dinkins v. Harris*, No. 15 Civ. 8914, 2016 U.S. Dist. LEXIS 85277, at *8 (S.D.N.Y. June 29, 2016); *Cuadrado v. Zito*, No. 13 Civ. 3321, 2014 U.S. Dist. LEXIS 57184, at *6 (S.D.N.Y. Mar. 21, 2014); *Horton v. Empire Bail Bonds*, No. 09 Civ. 1635, 2010 U.S. Dist. LEXIS 44958, at *6 (E.D.N.Y. May 7, 2010). Another district court case purported to apply New York contract law, but also mistakenly assumed that the release was unambiguous without considering the context in which it was negotiated and agreed to. *Lloyd v. the City of New York*, 15 Civ. 8539, 2017 U.S. Dist. LEXIS 77716 (S.D.N.Y. May 22, 2017).

City Defendants cite two state court opinions in which the plaintiffs alleged that a release was procured via fraud, *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011); *Booth v. 3669 Delaware, Inc.*, 92 N.Y.2d 934, 935 (1998). Moreover, in both cases there was a close factual relationship between the claims that were the subject of the original settlement and release and the claims plaintiffs sought to bring notwithstanding the release. These cases are dissimilar from the instant case in which the defendant attempts to bar a plaintiff from bringing a civil rights claim because the plaintiff settled a completely unrelated matter in prior litigation.

That leaves two cases that are most relevant to City Defendants' argument, *Siddons v. the City of New York*, No. 17 Civ. 4017, 2019 U.S. Dist. LEXIS 10119 (E.D.N.Y Jan. 7, 2019); and *Caraballo v. City of New York*, 24-2051, 2025 WL 1430152 (2d. Cir. May 19, 2025). In *Siddons*,

---

sense the case was about a limited release because the language of the release barred claims factually related to the claims being settled. It is also noteworthy that in *Ruskay* the language of the release had been drafted at least in part by the plaintiffs themselves. *See id.* at 395 n.4 ("We are unwilling to allow one who has obtained the benefit of a settlement to object, in a subsequent proceeding, that the documents he helped draft were unfair to him.").

the plaintiff argued that there was a mutual mistake, not that the context in which the alleged general release was negotiated rendered the language ambiguous. *See* 2019 U.S. Dist. LEXIS 10119, at *6-7. Nor did *Siddons* engage with any of the controlling New York law canvassed above, and based on the undersigned's review of the briefing in that case, plaintiff never invoked *Mangini* or its progeny. *Caraballo* is an unreported summary order which did not engage in a meaningful way with the controlling and persuasive New York authority discussed herein. *Caraballo* is not controlling as a formal matter, and it should not be considered persuasive given the limited attention it paid to the relevant doctrine.

### 3. The Language Used In Mr. Watson's "General" Release Is Treated as Ambiguous Under New York Law

The fundamental premise of City Defendants' argument is that the language used in the release executed by Mr. Watson is unambiguous and by its terms bars the assertion of the claims raised in the instant case. And your *amicus* is conscious that, on its face, the release at issue in this case might appear to be broad. But treating the language as unambiguous would conflict with the numerous New York courts that have come to the opposite conclusion regarding similar language. In *Mazzurco*, for example, the settlement purported to release the defendant "from any and all claims, demands, damages, costs [and] attorneys' fees." *See* Memorandum of Law in Support of Defendants PII Sam, LLC's and Secured Asset Management LLC's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to CPLR § 3211(A)(5) and CPLR § 3211(A)(1), at 3, Mazzurco v. PII SAM, available at 2015 WL 13652264. The court still treated the language as ambiguous based on the context in which it was negotiated. *Mazzurco*, 153 A.D.3d at 1342.

Similarly, in *Vornado Realty Tr. v. Castlton Env't Contractors, LLC*, No. 08-CV-04823 DLI JO, 2011 WL 4592800 (E.D.N.Y. Sept. 30, 2011), *opinion modified on denial of*

*reconsideration*, No. 08-CV-04823 DLI JO, 2011 WL 5825688 (E.D.N.Y. Nov. 16, 2011), the court noted that "[a]t first glance, the language of the Release . . . is clear and unambiguous." *Id.* at *4-5. But because the release included references to the specific cause of action that was the subject of the settlement, the court held that "the Release was intended to cover the settlement of only those claims at issue in the state court action." *Id.* similar language is present in the release at issue in the instant case. *See also Dury v. Dunadee*, 52 A.D.2d 206, 209, 383 N.Y.S.2d 748 (1976) (finding that although the language of the release "would seem on its face to include" the claim being litigated by the plaintiff, court would limit the release based on its recitation of the plaintiff's specific personal injury and property damage claim).

Along similar lines, in *Chiappone*, the plaintiff released "all past, present and future claims, demands, obligations, actions, causes of action, wrongful death or bodily or personal injury claims . . . of any kind whatsoever, whether known or unknown." *Chiappone*, 164 A.D.3d at 464. Even so, the Court found that the release was ambiguous based on the context in which it was negotiated. *Id.* at 464-65. And in *Johnson*, the settlement released "all actions or rights that I may ever have" against the defendant. 84 A.D. 3d at 427-28. The court still treated it as ambiguous. *Id.* These cases all confirm that City Defendant's argument is at war with New York law. The release executed by Mr. Watson cannot be treated as unambiguous on its face.

### B. Applying the Release to Bar Claims in This Case Would Raise Serious Constitutional Questions

New York's requirement that the release be applied narrowly is consistent with federal constitutional principles. As a general matter, the Supreme Court has limited the power of federal, state, and local governments to extract unrelated concessions when they confer benefits through otherwise legitimate governmental conduct, including through contracting.

In *Agency for International Development v. Alliance for Open Society International, Inc.*, 570 U.S. 205 (2013), for example, the federal government agreed to fund non-governmental organizations to combat the global spread of HIV/AIDS, but only if those organizations agreed to adopt policies opposing prostitution and sex trafficking. The Court held that imposing these conditions on the contracting organizations was impermissible. *Id.* at 214-15. The Court did so even though it recognized that contracting parties could always refuse to enter into a contract if they disagreed with the conditions imposed. *Id.* at 214. he Court recognized limitations on the government's power to extract waivers of constitutional rights via its contracting power, holding that in the speech context, Congress could impose conditions that were related to "the activities Congress wants to subsidize" but could not "leverage funding to regulate speech outside the contours of the program itself." *Id.* at 214-15.

In *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), the Court held that a state could not condition permission for a building permit on the landowner's agreement to grant the public an easement across their property. As the Court noted, the state would have been required to pay just compensation under the Takings Clause had it ordered the landowner to grant the easement. *Id.* at 831. The government could not avoid the Takings Clause by imposing conditions in the permit process. Again, the Court came to this conclusion notwithstanding its assumption that the state could constitutionally prohibit construction altogether to vindicate the public interest in having access to a public beach. *Id.* at 836. The problem, in short, was the lack of nexus between the government's demand and the permission sought by the landholder.

The Court has not only insisted on some nexus between governmental programs and the exactions they demand, but also has expressed concern when the price imposed for participation is too high, even where a nexus exists. In *Dolan v. City of Tigard*, 512 U.S. 374 (1994), the Court

addressed a land use regulation that conditioned a property owner's development of land on the owner's agreement to make adjacent land open to the public for construction of a pedestrian/bicycle pathway. *Id.* at 378-79. Although the Court found a sufficient nexus between the planned development and the concession, it insisted on some "rough proportionality" between the exaction demanded and the impact of the proposed development. *Id.* at 375, 387-88, 394-95. Similarly, although a state is free to fund medical care associated with childbirth but not abortion, it does not follow that a state may withhold all welfare benefits from any person who has exercised a constitutional right. *Cf. Harris v. McRae*, 448 U. S. 297, 317, n.19 (1980).

These principles squarely apply here. For the City to condition settlement of a lawsuit on the plaintiff's blanket waiver of the right to pursue unrelated claims – whether known or unknown – that the City had violated his constitutional rights, there must be, at the very least, some proportional nexus between the claims being waived and the claim being compromised. It is not enough simply to observe that the Plaintiff was not required to enter into a release and that he could have litigated, rather than settled, his prior claims thereby preserving his constitutional claims for future litigation. Nor is it enough to show that Plaintiff was not subjected to the kind of coercion that might suffice to void a contract between private parties, or that compelling the Plaintiff to waive all claims, known and unknown, served some broader legitimate public purpose. As the Court observed in *Nollan*, there must be a nexus between the action in which the City is engaged (here the settlement of specific identifiable claims) and its demand that Plaintiff broadly waive all of his other constitutional rights, especially when the waiver purportedly includes both known and unknown claims. This is especially true for constitutional claims that question the validity of government action itself. As the Court emphasized in *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 548 (2001), "[w]e must be vigilant when [the government]

imposes rules and conditions which in effect insulate its own laws from legitimate judicial challenge."

Based on this analysis, the general release on which City Defendants rely here can be read only as a limited release as it pertains to constitutional claims and can support dismissal only if the specific claims released therein have a nexus to the constitutional claims asserted here. As discussed above, this narrow construction is required both by federal constitutional principles and New York law. Accordingly, the Court should reject City Defendants' arguments.

## CONCLUSION

For the foregoing reasons, the City Defendants' motion for judgment on the pleadings should be denied.

Respectfully submitted,

Dated: November 13, 2025

s:/Alexander A. Reinert
ALEXANDER A. REINERT
55 Fifth Avenue, Room 1005
New York, New York 10003
(646) 592-6543
areinert@yu.edu
*Counsel for Amicus Curiae*