UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KOREY WATSON

                Plaintiff,

v.

THE CITY OF NEW YORK, FJC SECURITY
SERVICES, INC., SABRINA DUNCAN,
ASHLEY JOHNSON, KERN PROBHERBS,
NATASIA LYLES, TAMIKA JENKINS,
PATRICIA ROBINSON, and SEAN WILLIAMS,

                Defendants.

**MEMORANDUM AND ORDER**

23-cv-08975 (LDH) (CHK)

---

LASHANN DEARCY HALL, United States District Judge:

Korey Watson ("Plaintiff") brings the instant action against the City of New York,

Sabrina Duncan, and Kern Probherbs (collectively, the "City Defendants"), as well as FJC

Security Services, Inc. ("FJC"), Ashley Johnson, Natasia Lyles, Tamika Jenkins, Patricia

Robinson, and Sean Williams, pursuant to 42 U.S.C. §§ 1983 and 1988, the Fifth and Fourteenth

Amendments to the United States Constitution, and New York law.  The City Defendants move,

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, to dismiss the complaint in its

entirety.

## BACKGROUND

On September 7, 2022, Plaintiff visited the New York City Human Resources

Administration's office, located at 275 Bergen Street in Brooklyn, New York (the "HRA's

office"), to renew certain benefits.  (Am. Compl. ¶¶ 21-22, ECF No. 18.)  While Plaintiff was

waiting in line to speak with personnel working in the HRA's office, an unidentified person began yelling at Plaintiff.  (*Id.* ¶ 27.)  Ultimately, this unidentified person attacked and stabbed Plaintiff with a knife. (*Id.* ¶¶ 30-31, 35.)  As is relevant here, Defendant City of New York had contracted with Defendant FJC to provide security services at the HRA's office.  (*Id.* ¶ 7.)[1] However, Defendants City of New York and FJC did not utilize magnetometers or hand-held metal detector wands to screen people prior to entering the HRA's office.  (*Id.* ¶ 25.)  Nor did Defendants City of New York and FJC search people, including their bags or personal items, when they entered the HRA's office.  (*Id.* ¶ 26.)  On the day Plaintiff was attacked, the Individual Defendants did not intervene until after Plaintiff began bleeding profusely.  (*Id.* ¶¶ 30-36.)  On December 6, 2023, Plaintiff commenced the instant action.  (*See* Compl., ECF No. 1.) And, on August 9, 2024, Plaintiff and Defendant City of New York entered a general release in an unrelated action—NYC Comptroller claim number 2022PI023821 (the "Release")—which discharged the City Defendants from certain liability.  (Decl. Kellyane Holohan ("Holohan Decl.") ¶ 1, ECF No. 44-1; *Id.*, Ex. A ("Release") at 2, ECF No. 44-2.)  As discussed, *infra*, the Release will be considered in addressing the City Defendants' instant motion.[2]

## STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant Rule 12(c) of the Federal Rules of Civil Procedure is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6).  *See Bank of New York v. First Millennium*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard

---

[1] And, as is also relevant here, Defendants Duncan, Proherbs, Johnson, Lyles, Jenkins, Robinson, and Williams (collectively, the "Individual Defendants") were employed by either Defendant City of New York or Defendant FJC to perform duties that related to security services.  (*Id.* ¶ 9.)  And, on the day of the attack, each of the Individual Defendants were assigned to the HRA's office, ostensibly to provide security services.  (*Id.* ¶ 10.)

[2] The Court takes judicial notice of the proceedings in NYC Comptroller claim number 2022PI023821.  *See Ferrari v. Cnty. of Suffolk*, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) ("[A] court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice.*")

applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions

for judgment on the pleadings." (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994))).

When ruling on a Rule 12(b)(6) motion to dismiss, the Court "confine[s] its consideration 'to

facts stated on the face of the complaint, in documents appended to the complaint or incorporated

in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard*

*F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v.*

*WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)).  However, "[i]f, on a motion under

Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the

court, the motion must be treated as one for summary judgment under Rule 56 [of the Federal

Rules of Civil Procedure]."  Fed. R. Civ. P. 12(d).

## DISCUSSION

### I.     Defendant's motion, made pursuant to 12(c), shall be converted to a motion 56.1

In the instant action, the City Defendants invite the Court to convert its motion to one for

summary judgment in light of Plaintiff being on notice of the possibility that this Court would do

so.  (Defs. City of New York, Sabrina Duncan, and Kern Phobherbs' ("City Defs.") Reply Mem.

L. Supp. Mot. J. Plead. ("City Defs.' Reply") at 3, ECF No. 48.)  Plaintiff argues that the Court

should decline to convert the City Defendant's motion to one for summary judgment because

doing so would delay Plaintiff's pursuit of his claims against the City Defendants and the other

defendants in this action, as well as potentially foreclose his claims against the City Defendants.[3]

---

[3] Plaintiff also argues that, because the City Defendants failed to assert an affirmative defense related to the Release
when the City Defendants jointly filed an Answer to the Amended Complaint, (*see* Answer, ECF No. 28), the City
Defendants should be precluded from asserting this defense now in light of the prejudice that Plaintiff would endure.
(Pl.'s Mem. L. Opp'n City Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 11-12, ECF No. 46.)  This argument is without
merit.  As Plaintiff correctly notes, "'a district court may still entertain affirmative defenses at the summary
judgment stage' when a defendant has not timely pleaded the affirmative defense, [but] it may only do so 'in the
absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or
undue delay of the proceedings.'"  (Pl.'s Opp'n at 12 (quoting *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d
Cir. 2003)).)  Here, Plaintiff merely argues the Court should decline to entertain any defense related to the Release

(Pl.'s Mem. L. Opp'n City Defs.' Mot. J. Plead. ("Pl.'s Opp'n") at 13-14, ECF No. 46.)  The Court accepts the City Defendants' invitation.

"To determine whether [a] district court [may] properly convert[] a 12(b)(6) or 12(c) motion into a motion for summary judgment, the essential inquiry is whether the [non-moving party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys, Div. of/and Am. Home Prods. Corp.*, 850 F.2d 904, 911 (2d Cir. 1988) (alteration accepted) (internal quotation marks and citation omitted).  This determination depends "largely on the facts and circumstances" of the case and may even be granted sua sponte.  *Id.*; *Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 49 (2d Cir. 2020) (quoting *Schwan-Stabilo Cosms. GmbH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005)); *see also Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir.2000)) (same).

Here, the relevant facts and circumstances plainly illustrate that Plaintiff was put on notice of the possibility that the Court would convert the City Defendants' motion into a motion for summary judgment.  Indeed, Plaintiff acknowledged this possibility in his opposition brief to

---

"given the timing and prejudice to Plaintiff and the other parties in the litigation."  (Pl.'s Opp'n at 13.)  And, as Plaintiff also aptly notes,"[i]n determining what constitutes 'prejudice,' courts consider whether the assertion of the defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'"  (Pl.'s Opp'n at 11 (quoting *Monahan v. NYC Department of Correction*, 214 F.3d 275, 284 (2d Cir. 2000)).)  Interestingly, however, Plaintiff fails to make any argument in connection with the factors he references.  (*See* Pl.'s Opp'n.)  Instead, Plaintiff argues that allowing the City Defendants to assert an argument based on the Release "would cause substantial prejudice to [Plaintiff] . . . ranging from delays of his pursuit of his claims against both the City Defendants and the [other defendants], to potential foreclosure of his claims against the City Defendants."  (*See id.* at 12.)  But, "mere delay in the litigation does not establish undue prejudice."  *CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-CV-05669, 2014 WL 2854656, at *4 (S.D.N.Y. June 20, 2014) (alterations in original accepted).  And, whether Plaintiff will be foreclosed from pursuing his claims against the City Defendants, by virtue of the Court considering the Release, does not relate to any of the factors that courts consider.  *See Monahan*, 214 F.3d at 284.  Indeed, whether Plaintiff would be foreclosed from pursuing his claims against the City Defendants due to them being barred does not relate to undue prejudice at all.

the City Defendants' motion.  (Pl.'s Opp'n at 13 ("If the Court considers the General Release, FRCP 12(d) would require the Court to construe the motion as one for summary judgment . . .").) Moreover, any notion that Plaintiff was surprised by the City Defendants' assertion of an argument for dismissal premised on the Release is belied by the record in this case.  On July 6, 2025, in anticipation of the City Defendants' instant motion, the City Defendants filed a pre-motion conference letter attaching the Release and unequivocally stating that it would seek dismissal of Plaintiff's claims as against them in light of the Release.[4]  (*See* City Defs.' Mot., ECF No. 41; Ex. General Release 2022 matter, ECF No. 41-1.)  Lastly, Plaintiff cannot tenably argue that he was denied a reasonable opportunity to meet the facts outside the pleadings with respect to the Release because he, in fact, seized this opportunity by filing a declaration in support of his opposition to the instant motion.  *See In re G. & A. Books, Inc.*, 770 F.2d at 295 ("A party cannot complain of lack of a reasonable opportunity to present all material relevant to a motion for summary judgment when[, as here] both parties have filed exhibits [or] affidavits . . . in support of and in opposition to a motion . . . . ")  Accordingly, the Court hereby converts the City Defendants' motion to a motion for summary judgment.

**I.      Plaintiff's claims are barred by the Release**

Summary Judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material

---

[4] On August 28, 2025, the Court ordered briefing on the instant motion.  (*See* Order, Aug. 28, 2025.)  The deadline for Plaintiff's opposition brief was scheduled for October 13, 2025.  (*See id.*)  As such, Plaintiff was on notice of the City Defendants' arguments pertaining to the Release for more than 3 months prior to when Plaintiff's opposition brief was due.

fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact."); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004) ("The burden is on the moving party to establish the absence of any material factual issue.").  Where the non-movant bears the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim.  *See Celotex Corp.*, 477 U.S. at 325 (explaining that, "with respect to an issue on which the nonmoving party bears the burden of proof[,] . . . the burden on the moving party may be discharged by 'showing'. . . that there is an absence of evidence to support the nonmoving party's case").  Once the movant meets their initial burden, the non-movant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment . . . . ."); *Anderson*, 477 U.S. at 250 ("[W]hen a properly supported motion for summary judgment is made, the adverse [or nonmoving] party 'must set forth specific facts showing there is a genuine issue for trial."); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002) (same).  The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by allegations or facts, *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

"Under New York law, general releases are governed by principles of contract law." *Albany Sav. Bank, FSB v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997) (citing *Mangini v. McClurg*, 24 N.Y.2d 556, 562 (1969)); *see Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir.

6

2001) ("A release is a species of contract and 'is governed by principles of contract law.'" (quoting *Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir.1985) (applying New York law))). "Under New York law, a release—like any contract—must be construed in accordance with the intent of the parties who executed it." *Golden Pac. Bancorp*, 273 F.3d at 515 (citations omitted). That is, "[w]here the language of a release is clear, effect must be given to the intent of the parties as indicated by the language employed." *Mateo v. Carinha*, 799 F. App'x 51, 53 (2d Cir. 2020) (summary order) (alterations in original accepted) (quoting *Wang v. Paterson*, No. 07-2032, 2008 WL 5272736, at *4 (S.D.N.Y. Dec. 18, 2008)). And, as is relevant here, "matters extrinsic to the [Release] may not be considered when the intent of the parties can fairly be gleaned from the face of the [Release]." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000). That said, however, for a release to bar certain claims without consideration of extrinsic matters, the release must "contain an explicit, unequivocal statement of a present promise to release [the] defendant from liability." *Bank of Am. Nat. Tr. & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 713 (2d Cir. 1985) (internal quotations and citation omitted). The defendant bears the "initial burden of [showing] a release bars the plaintiff's claims," at which point the burden "shifts to the plaintiff to show that there has been fraud, duress or some other fact which will be sufficient to void the release." *Liverpool v. City of New York*, No. 18-CV-1354, 2021 WL 3604855, at *3 (S.D.N.Y. 2021) (internal quotation marks and citations omitted).

Against this backdrop, the City Defendants argue that the Release bars Plaintiff's claims against them. (*See* City Defs.' Mem. L. Supp. Mot. J. Plead. ("City Defs.' Mem.") at 4-6, ECF No. 44-4.) According to the City Defendants, this is because the Release was fully executed and its plain language unequivocally discharged the City Defendants from any claim Plaintiff had or

may have against the City Defendants in relation to any matter that occurred prior to and through August 9, 2024.  (*See* City Defs.' Mem. at 7-9; Holohan Decl., Release.)  The Court agrees.

As the City Defendants argue, Plaintiff entered the Release on August 9, 2024.[5] (Holohan Decl., Release at 2; Def.'s Mem. at 8.)  And, Plaintiff attests that he was represented by counsel when he signed the Release.  (Decl. Korey Watson ("Watson Decl.") ¶¶ 3, 14, ECF No. 46-1.)  By the terms of the Release, Plaintiff indicated that he consented to:

> Release[ing] and forever discharg[ing] the City of New York, and all past and present officials, officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York, and all other individually named defendants and entities represented and/or indemnified by the City of New York, collectively the "RELEASEES," from any and all state and federal tort claims, causes of action, suits, occurrences, and damages, whatsoever, known or unknown, including but not limited to state and federal civil rights claims, actions, and damages, which RELEASOR had, now has, or hereafter can, shall, or may have, either directly or through subrogees or other third persons, against the RELEASEES for, upon or by reason of any matter, cause, or thing whatsoever that occurred through the date of this RELEASE . . . .

(Holohan Decl., Release at 1.)  Within the Release, Plaintiff was provided with an allotted space to list other claims or actions he sought to exclude from the purview of the Release.  (*Id.*) Preceding this allotted space was a warning statement that read, "**ALL OUTSTANDING CLAIMS OR ACTIONS ARE INCLUDED IN THIS RELEASE UNLESS EXCLUDED SPECIFICALLY BY NAME BELOW**."  (*Id.*)  Plaintiff failed, however, to list any outstanding claims or actions he sought to exclude from the purview of the Release.  (*Id.*)  As such, by the Release's terms, Plaintiff agreed, without limitation, to "[r]elease[] and forever discharge[] the City of New York, and all past and present . . . employees, agents, assignees, lessees, and representatives of the City of New York, . . . from any and all state and federal tort claims[ or]

---

[5] Notably, Plaintiff filed the Amended Complaint less than five months before the he signed the Release.  (*See generally* Am. Compl.)  As such, there can be no question that Plaintiff was aware of his instant claims when he executed the Release.

causes of action . . . including but not limited to state and federal civil rights claims . . . that occurred through [August 9, 2024]." (*See id.*, Release at 1-2.)  This language is unambiguous and, therefore, must be enforced in accordance with its plain meaning.  *See Golden Pac. Bancorp*, 273 F.3d at 515; *Mateo v. Carinha*, 799 F. App'x 51, 53 (2d Cir. 2020).  Indeed, the Second Circuit has interpreted "virtually identical language in general releases crafted by the City of New York" on "several occasions"; and, "[e]ach time, [it has] summarily affirmed the grant of a dispositive motion" based on it.  *Caraballo v. City of New York*, No. 24-2051-CV, 2025 WL 1430152, at *2 (2d Cir. May 19, 2025) (summary order) (collecting cases).

Next, the parties do not dispute that the September 7, 2022 incident giving rise to Plaintiff's claims occurred prior to Plaintiff entering the Release.[6]  (*See* Def.'s Mem.; Pl.'s Opp'n.)  Accordingly, any claims asserted by Plaintiff arising from this incident are within the purview of claims barred as to the City Defendants.  *See Caraballo*, No. 24-2051-CV, 2025 WL 1430152, at *2.  This conclusion is buttressed not only by the plain language of the Release, but also by what was omitted from the Release.  As noted, Plaintiff was allotted space within the Release to exclude any "other claims or actions" from the purview of the Release but failed to list anything.  (*See* Holohan Decl., Release at 1 (emphasis omitted).)  This is fatal to any argument that the Release was not intended to cover Plaintiff's instant claims as to the City Defendants, especially considering that, at the time Plaintiff signed the Release, he was represented by counsel and this action was pending.  *See Smith v. City of New York*, No. 116, 2025 WL 3671272, at *2 (N.Y. Dec. 18, 2025) (collecting cases) ("Although plaintiff, who was

---

[6] The terms of the Release unambiguously contemplate Defendant City of New York, and its employees and agents, being absolved of liability for matters occurring prior to August 9, 2024.  (*See* Holohan Decl., Release at 1 (defining "Releasees" to include Defendant City of New York).  And, the allegations in the Amended Complaint concede that Defendants Duncan and Probherbs were "acting as agents [or] employees of [the City of New York]."  (Am. Compl. ¶ 77; *see id.* ¶ 9 (defining "Individual Defendants," as used in paragraph 77, to include Defendants Duncan and Probherbs).)

represented by counsel, could have excluded this action from the release by the simple act of listing it in the space provided for that purpose, he signed the release without doing so, an objective manifestation of assent that is binding upon him notwithstanding any unilateral mistake or subsequent regret on his part.").

In an effort to persuade the Court that the Release does not absolve the City Defendants from liability with respect to his claims, Plaintiff argues that the Court should "look beyond the four corners of the [Release]" and inquire into whether the Release was "fairly, knowingly, and voluntarily made, not merely whether its text on its face was clear." (Pl.'s Opp'n at 21.)  In other words, Plaintiff does not argue that the Release is ambiguous or that the Release should be voided by virtue of fraud, duress, or some other fact, (*see* Pl.'s Opp'n), as is his burden, *Liverpool*, No. 18-CV-1354 (LJL), 2021 WL 3604855, at *3.  Rather, Plaintiff argues the Court should look past any clear language in the Release and consider extrinsic evidence. (*See id.* at 20-23.)  The Court declines to do so.[7]  As explained above, and as Plaintiff concedes, the Second Circuit, as well as other New York Courts, have routinely applied contract principles to general releases.  (Pl.'s Opp'n at 14 (citing *Caraballo*, No. 24-2051-CV, 2025 WL 1430152.)  And, because the Court concludes the plain text of the Release is clear and unambiguous, it "cannot consider extrinsic evidence of the parties' intent and must enforce the [R]elease according to its terms." *Mateo v. Carinha*, No. 14 CV 9020, 2019 WL 1409727, at *3 (S.D.N.Y. Mar. 28, 2019), *aff'd*, 799 F. App'x 51 (2d Cir. 2020); *See Lloyd v. City of New York*, 2017 WL 2266876, at *3

---

[7] The Court is aware, as Plaintiff points out, that courts in the Second Circuit have inquired into whether a plaintiff knowingly and voluntarily waived rights in federal employment discrimination cases. (*See* Pl.'s Opp'n at 21.) Although Plaintiff contends that it "makes sense for courts to apply" the multi-factor test used in federal discrimination cases in "connection with claims brought under Section 1983," (*see id.* at 20), the Court has not been persuaded to do so here.  Indeed, Plaintiff has failed to point the Court to any binding precedent that requires application of the multi-factor test in this case.  Moreover, it is not persuaded that such an inquiry is appropriate in light of Plaintiff being represented by counsel and the clear and unambiguous language contained in the Release. (*See* Watson Decl. ¶¶ 3, 14; Holohan Decl., Release at 1.)

(S.D.N.Y. May 22, 2017) ("Courts do not consider extrinsic evidence of the meaning of a contract, however, unless the contract is ambiguous standing alone.")  For the same reason, Plaintiff's declaration does not change the Court's calculus.  In his declaration, Plaintiff explains that he understood the Release to only encompass a waiver of claims unrelated to Plaintiff's instant claims, and that he would not have entered the Release had he understood that his present claims would also be waived.  (Watson Decl. ¶¶ 6, 16-17, 19.)  As such, Plaintiff's declaration constitutes extrinsic evidence that impermissibly attempts to narrow the scope of the Release by providing information about Plaintiff's intent when he signed the Release.  See *Mateo*, No. 14 CV 9020-LTS, 2019 WL 1409727, at *3; *Shanghai Join Buy Co. v. Pstex Grp., Inc.*, No. 04 CIV. 4449, 2004 WL 2471432, at *2 (S.D.N.Y. Nov. 1, 2004) (holding an argument premised on a declaration was precluded because "extrinsic evidence cannot be admitted to add to or vary the terms of an unambiguous contract").

Lastly, the Court would be remis not to point out the readily distinguishable nature of the cases upon which Plaintiff relies in arguing that New York courts have limited the application of broadly worded releases where there are signs of unfairness.  (*See* Pl.'s Opp'n at 18-19.)  In each of the cases cited for this proposition, the plaintiff was not represented by counsel at the time the release at issue was executed and/or was pressured to enter the release shortly after their claims arose.  *See Huang v. Llerena-Salazar*, 222 A.D.3d 1033, 1034 (2nd Dep't 2023) (finding signs of unfairness because "the plaintiff averred, among other things, that shortly after [an] accident, an insurance representative for the defendants called him 'repeatedly'; that he had difficulty understanding the defendants' representative due to a language barrier; that the defendants' representative, who had him sign the release to obtain money for medical bills, never explained that the document he signed was a release or had the legal effect of the release; and that the

plaintiff was not represented by an attorney at the time he signed the release"); *Paulino v. Braun*, 170 A.D.3d 506, 506 (1st Dep't 2019) (finding signs of unfairness because "a claim specialist for [the] defendant's insurer made him [a] $6,000 [settlement] offer while [the plaintiff] was still recovering from surgery and unable to work, and that, despite [the plaintiff's] response that [this offer] was insufficient, [the defendant's insurer] continued to 'pressure' him to sign the release until 'finally' he 'relented'" (alterations in original accepted)); *Johnson v. Lebanese Am. Univ.*, 84 A.D.3d 427, 433 (1st Dep't 2011) (acknowledging the plaintiff's lack of opportunity to consult with counsel before signing a release that purportedly barred certain discrimination claims).  Because Plaintiff attests to being represented by counsel when he signed the Release and does not reference any pressure in executing the Release, the Court is not persuaded that his unfairness argument is applicable to this case.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. Accordingly, each of Plaintiff's claims as to Defendants City of New York, Duncan, and Probherbs are DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
     March 31, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge